USDC SCAN INDEX SHEET










JOEH    1/6/03    13:37
3:97-CV-01547   WALKER V. SAN DIEGO CITY OF
*156*
*DECL.*

Amy B. Vandeveld, State Bar No. 137904
LAW OFFICES OF AMY B. VANDEVELD
1850 Fifth Avenue, Suite 22
San Diego, California 92101
Telephone: (619) 231-8883
Facsimile: (619) 231-8329

Attorney for PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY WALKER, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SAN DIEGO, et al., <br><br> Defendants. | Case No.: 97 cv 154 BTM (LSP) <br><br> **DECLARATION OF AMY B. VANDEVELD IN SUPPORT OF APPLICATION FOR INJUNCTIVE RELIEF** |

I, AMY B. VANDEVELD, hereby declare:

1. That I am an attorney at law duly licensed to practice in the State of California and the United States District Court for the Southern District of California and am a sole practitioner. I am the attorney for the Plaintiffs in the above entitled action. Each Plaintiff designated me as his or her representative for purposes of enforcing the Settlement Agreement in this Action. If called to testify, I would and could competently and truthfully testify to the following facts based upon my own personal knowledge.

2. The Defendants are in breach of the Settlement Agreement and Mutual Release entered into by the Parties effective February 21, 2001 (hereinafter "the Agreement").

3. Beginning in March of 2001 and continuing to the present, I have been involved in numerous site inspections and meetings with Defendants' representatives in an effort to ensure that time lines set forth in the Agreement were met by Defendants. I prepared numerous "Issues Lists" which were provided to Defendants as early as September of 2001.

4. After several site inspections by Plaintiffs and a site inspection by the Court on September 13, 2002, at which time numerous violations of the Agreement were observed by the Court, the Court ordered the Plaintiffs to provide a comprehensive list of all remaining issues and violations. The Court then asked the Parties to identify a time frame by which the remaining issues would be remedied. By letter to the Court of September 19, 2002, Ms. Vandeveld advised the Court that the Parties agreed all remaining issues would be remedied by October 4, 2002, on which date another site inspection would occur.

5. On October 4, 2002, the Court visited the Stadium with me, Ms. Walker and Steve Shushan. At that time, Mr. Shushan advised the Court that the modifications still were not completed and the Court, therefore, decided to schedule a telephone conference for the following Monday, with counsel for the Parties. In that conference, the Court scheduled a hearing on November 8, 2002 to address the remaining issues and to consider Plaintiffs' requests for sanctions and attorneys' fees and costs.

6. Because of a family emergency, Plaintiffs' counsel could not attend the November 8, 2002 hearing and the matter was continued to January 15, 2003.

7. In a recent meeting with Steve Shushan, and another site inspection on December 18, 2002, the Plaintiffs observed that violations

remained at the site, despite Defendants' statements to the contrary.

8. I attended a meeting on February 22, 2002 with defense counsel, Steve Shushan and Beverly Walker. At that meeting, Mr. Gordon stated that the Defendants wanted to delay installation of wheelchair locations in Field Sections 19 and 20 until after the Padres vacated the Stadium. The Plaintiffs agreed to that delay, in exchange for 50 free pairs of tickets, comprised of 28 semi-ambulatory pairs and 22 wheelchair pairs. We agreed the tickets would apply to all non-Padres events and would be selected by Beverly Walker. We also agreed that the seats for the 2002 Chargers season would be chosen by Ms. Walker from the pool of seats currently available. For the following Chargers' seasons, however, she would be allowed to choose from all seats, except Club seats, prior to the sale of any seats to the general public. Plaintiffs are allowed to distribute those seats, without restriction. Further, the Wheelchair pairs are to be counted as "Sold" seats for purpose of the "trigger" for the installation of additional wheelchair pairs.

9. Since the Agreement in February of 2002, Ms. Walker identified 100 seats which would be provided to Plaintiffs pursuant to this new agreement. In fact, the City has provided these same tickets for each event occurring after February 22, 2002, except Padres games. The Plaintiffs received the 50 pairs of tickets for all Chargers games, the Holiday Bowl, the Gold Coast Classic, Aztec games and high school football competitions.

10. In September of 2002, the Court advised the Defendants that it might impose sanctions against Defendants and would award attorneys fees and costs to Plaintiffs for continued violations of the Settlement Agreement. The hearing on this was initially scheduled for early

November, 2002. To date, the Defendants are still in breach of our Agreement. Clearly, the threat of monetary sanctions is insufficient to compel Defendants to comply with the Settlement Agreement. It is Plaintiffs' contention that the only effective measure for compelling compliance is to deny further use of the Stadium until all of the terms of the Settlement Agreement are met.

11. It is also Plaintiffs' contention that they will be irreparably harmed if the disabled community and the Plaintiffs are not provided tickets for disabled seating for the upcoming Super Bowl, to which they are entitled pursuant to modifications to the Settlement Agreement, the original Settlement Agreement and this Court's Order of November 29, 2001.

12. To date, the Plaintiffs have not been provided fifty (50) free pairs of tickets to the Super Bowl, to which they are entitled pursuant to an amendment to the Settlement Agreement, which was confirmed in a letter from defense counsel, attached hereto as Exhibit "A". Further, despite Plaintiffs' request, Defendants have failed to provide proof that, for the Super Bowl, the sixty (60) semi-ambulatory seats that were to be withheld from sale to the general public pursuant to the Court's Order of November 29, 2001, have, in fact, been withheld. Nor have Defendants offered any evidence that these tickets have actually been made available for sale to the disabled community.

13. Pursuant to Exhibit "C", paragraph 1 of the Parties' Agreement, wheelchair locations are never to be sold to the general public. Instead, they are only to be sold to wheelchair users and, after the Two-Day Window or following a Sell-Out Date, to other people with disabilities. Plaintiffs are informed and believe that, with respect to the Super Bowl, these tickets have never been made available

| | |
|---|---|
| 1 | for purchase by people with disabilities, other than wheelchair users. |
| 2 | Plaintiffs are further informed and believe that, with respect to the |
| 3 | Super Bowl, Defendants have failed to make all wheelchair locations |
| 4 | available for sale to wheelchair users. |
| 5 |     14. Attached hereto as Exhibit "A" is a true and correct copy of a |
| 6 | letter from Mr. Gordon, defense counsel, confirming the Agreement by the |
| 7 | Parties regarding the delay of installation of wheelchair locations in |
| 8 | Field Sections 18 and 19 in exchange for providing Plaintiffs with fifty |
| 9 | free pairs of tickets. |
| 10 |     15. It is Plaintiffs' understanding that the City Attorney has |
| 11 | been designated as the Defendants' Representative, pursuant to paragraph |
| 12 | 20(j) of the Settlement Agreement and that Mr. Gordon has authority to |
| 13 | bind the Defendants with respect to all aspects of the administration |
| 14 | and enforcement of the Agreement. |
| 15 |     I declare under penalty of perjury under the laws of the State of |
| 16 | California and the United States of America that the foregoing is |
| 17 | true and correct to the best of my knowledge. |

DATED: January 3, 2003

AMY B. VANDEVELD

LESLIE E. DEVANEY
ANITA M. NOONE
LESLIE J. GIRARD
SUSAN M. HEATH
GAEL B. STRACK
ASSISTANT CITY ATTORNEYS

Eugene P. Gordon   Deputy City Attorney

OFFICE OF
THE CITY ATTORNEY
CITY OF SAN DIEGO

Casey Gwinn
CITY ATTORNEY

CIVIL DIVISION
1200 THIRD AVENUE, SUITE 1100
SAN DIEGO, CALIFORNIA 92101-4100
TELEPHONE (619) 533-5800
FAX (619) 533-5856

May 10, 2002

Amy B. Vandeveld
Attorney at Law
1850 Fifth Avenue, Suite 22
San Diego, CA 92101

*Walker v. City of San Diego*

Dear Amy,

You will recall that the parties have agreed to postpone the building of platforms for the wheelchair seating pairs located in Sections 18 and 19 in the Field Level until the Padres vacate the Stadium. In return, the City agreed to provide twenty-two Wheelchair Seating Pairs and twenty-eight Semi-Ambulatory Seats for Chargers' games for persons with disabilities to be evenly dispersed throughout the Stadium.

I think it is important that Plaintiffs meet with Stephen Shushan and Mike Dougherty of the Chargers soon for the purpose of determining the location of those seats.

With respect to the numerous changes to the Settlement Agreement which have been agreed upon by the parties, as I recall, you had indicated a willingness to put together a document incorporating all of the amendments. We should probably undertake this project as soon as we can.

Hope things are going well and give me a call if you would like to discuss these matters.

Sincerely yours,

CASEY GWINN, City Attorney
By
Eugene P. Gordon
Deputy City Attorney

**Exhibit A**

```
Amy B. Vandeveld, State Bar No. 137904
LAW OFFICES OF AMY B. VANDEVELD
1850 Fifth Avenue, Suite 22
San Diego, California  92101
Telephone: (619) 231-8883
Facsimile: (619) 231-8329

Attorney for PLAINTIFFS
```

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY WALKER, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>CITY OF SAN DIEGO, et al.,<br><br>    Defendants. | Case No.: 97 cv 154 BTM (LSP)<br><br>**DECLARATION OF BEVERLY WALKER IN SUPPORT OF APPLICATION FOR INJUNCTIVE RELIEF** |

I, BEVERLY WALKER, hereby declare:

1. I am a party to this action. If called to testify, I would and could competently and truthfully testify to the following facts.

2. The Defendants are in breach of the Settlement Agreement and Mutual Release entered into by the Parties effective February 21, 2001 (hereinafter "the Agreement").

3. I have been involved in numerous site inspections and meetings with Defendants' representatives since at least March of 2001 in an effort to ensure that time lines set forth in the Agreement were met by Defendants.

///

4. Several items in the Agreement were to have been completed by April 1, 2001. Other items were to be completed by April 1, 2002. Based upon my inspections, I discovered that the following modifications required under the Agreement are still incomplete:

   a. Railings have not been lowered. In fact, new railings have been installed which block the view of people with disabilities.

   b. Concession stands have not been modified to provide a lowered portion.

   c. Restrooms are still inaccessible because of, among other violations, toilets are too far from side walls, stall doors do not have self-closing latches, grab rails are improperly located, hardware that requires excessive force to use.

   d. Plaza Sections 4, 7 and 37 have not been modified to conform to the construction of Plaza Section 8. Defendants installed steps instead of ramps.

   e. There is an insufficient number of wheelchair seating pairs on the Plaza and Press Levels.

   f. New seats have been added at the View Level, but additional disabled seating was not provided. Steven Shushan, the Assistant Stadium Manager, recently advised the media that additional seats will be installed in the Field Level and other levels throughout the Stadium. Plaintiffs have not been advised of these modifications, nor have Plaintiffs been provided with plans or drawings establishing that new disabled seating will be provided in relation to the additional seating.

   g. The Special telephone number has not been established and made available exclusively for the sale of disabled seating at the Stadium.

   h. Transfer seats at the Tunnel Lid are non-compliant. They are not on aisles and do not have companion seats.

   i. Plaintiffs were never provided with the design of removable seats that would be installed in unused wheelchair spaces after the Two-Day Window.

   j. Toilet stalls in the Club Level have not been relocated to provide appropriate headroom.

   k. Two TV monitors have not been provided to all disabled seating locations which have obstructed views.

   l. The tables in the exterior dining area which are wheelchair

accessible are on an inaccessible path of travel due to the excessive slope of the walkway, as are the water fountains in this area.

m. Handrails at wheelchair locations still loop outward.

n. There is a lack of signage directing people with disabilities to accessible features. This is of primary concern with respect to directions to the new elevators and lifts.

o. Not all suites have semi-ambulatory locations and wheelchair locations.

p. The new elevators are often not operational.

q. The Access Guide is not complete.

r. The First Aid station has a counter which protrudes into the path of travel.

s. Seats designated as Semi-ambulatory do not have 24 inch clearance in Club/Loge and Press Sections 44 through 49.

t. Windscreens do not comply with the Agreement and are unusable because of the location of the handles and improper closers.

u. The paths of travel in the Club lounges are insufficient, precluding access to buffets and carving tables in the rear of the lounges.

v. Condiment stands are still protruding objects and are too high.

w. Stairs striping has not been installed.

x. Curb ramps are inaccessible to persons with sight impairments because there is no beveled lip at the end of the curb ramp, as required by Title 24 of the California Code of regulations.

5. Additionally, new issues have continued to arise which effect the accessibility of the Qualcomm Stadium facilities to people with disabilities. Those issues include the following:

a. Defendants installed metal sheets in front of the disabled seating located in the View Level. These sheets obstruct the view of the field.

b. Defendants installed handrails in the View Section which protrude into the path of travel.

c. The only accessible entrance from Murphy's Sports Bar is closed before the Sports Bar is closed to the public, requiring people with disabilities to use inaccessible exits.

3

  d. The Stadium Collection Stand is not accessible because it is too high and has a step which blocks access to the counter.

  e. In Section H-2 of the parking lot, a Budweiser Tent was erected. The tent was inaccessible because the counter was too high, the portable toilet facility was inaccessible, the ramps over cables were too steep. Further, this is a modification or alteration of which Plaintiffs were to be apprised. Plaintiffs received no information about the tent until it was personally observed by me.

  6. In a recent meeting with Steve Shushan, and another site inspection, on December 18, 2002, and during Chargers' games in November and December of 2002, I observed that the above-referenced violations remained at the site, despite Defendants' statements to the contrary.

  7. I attended a meeting on February 22, 2002 with defense counsel, Steve Shushan and my attorney, Amy B. Vandeveld. At that meeting, Mr. Gordon stated that the Defendants wanted to delay installation of wheelchair locations in Field Sections 19 and 20 until after the Padres vacated the Stadium. The Plaintiffs agreed to that delay, in exchange for 50 free pairs of tickets, comprised of 28 semi-ambulatory pairs and 22 wheelchair pairs. We agreed the tickets would apply to all non-Padres events and would be selected by me. We also agreed that the seats for the 2002 Chargers season would be chosen by me from the pool of seats currently available. For the following Chargers' seasons, however, I would be allowed to choose from all seats, except Club seats, prior to the sale of any seats to the general public. Plaintiffs are allowed to distribute those seats, without restriction. Further, the Wheelchair pairs are to be counted as "Sold" seats for purpose of the "trigger" for the installation of additional wheelchair pairs.

  8. Since the Agreement in February of 2002, I identified 100 seats which would be provided to Plaintiffs pursuant to this new

4

agreement. In fact, the City has provided these same tickets for each event occurring after February 22, 2002, except Padres games. The Plaintiffs received the 50 pairs of tickets for all Chargers games, the Holiday Bowl, the Gold Coast Classic, Aztec games and high school football competitions.

9. I have been advised by Mike Dougherty, who is responsible for Chargers ticket distribution, that there are limited tickets available for the Super Bowl, which is scheduled for January 26, 2003. Plaintiffs specifically requested these tickets from the City by letter dated December 12, 2002. The tickets have not been provided to the Plaintiffs to date.

10. Further, based upon information provided by Mr. Dougherty, it is my understanding that the 60 Semi-Ambulatory seats that were to be withheld for sale to people with disabilities, pursuant to the Court's Order of January 29, 2002, have not been withheld. This is in direct breach of our Agreement and the Court's order.

11. It is my understanding that, in September of 2002, the Court advised the Defendants that it might impose sanctions against Defendants and would award attorneys fees and costs to Plaintiffs for continued violations of the Settlement Agreement. The hearing on this was initially scheduled for early November, 2002. To date, the Defendants are still in breach of our Agreement. Clearly, the threat of monetary sanctions is insufficient to compel compliance.

///
///
///
///
///

1 | I declare under penalty of perjury under the laws of the State of
2 | California and the United States of America that the foregoing is
3 | true and correct to the best of my knowledge.
4 | DATED: January 2, 2003

*Beverly G. Walker*
BEVERLY WALKER, Plaintiff

## PROOF OF SERVICE

I, the undersigned, declare that: I am authorized to serve the following document(s) in the within action pursuant to F.R.Civ.P. 4(c) and that the documents were served on today's date as follows:

1. <u>Case Name/USDC Number</u>:
   **WALKER v. CITY OF SAN DIEGO et al.
   USDC No.: 97 cv 1547 BTM (LSP)**

2. <u>Document(s) served</u>:
   **APPLICATION FOR INJUNCTIVE RELIEF; DECLARATION OF BEVERLY WALKER IN SUPPORT OF APPLICATION FOR INJUNCTIVE RELIEF; DECLARATION OF AMY B. VANDEVELD IN SUPPORT OF APPLICATION FOR INJUNCTIVE RELIEF;**

3. <u>Person(s) served/Place of service</u>:
   **Eugene F. Gordon, Esq.
   1200 Third Avenue, Suite 1200
   San Diego, CA 92101
   Facsimile No.: (619) 533-5847
   Counsel for Defendants**

4. <u>Manner of Service</u>:

   ____ (a) <u>Personal Service:</u> By handing copies of the document(s) to the person served [F.R.Civ.P. 5(b)(2)(A)].

   ____ (b) <u>Service by Mail:</u> I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid, at San Diego, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit. [F.R.Civ.P. 5(b)(2)(B); Cal.Code of Civil Procedure, Sections. 1013a, 2015]

   _XX_ (c) <u>Facsimile Transmission:</u> From Fax No. (619) 231-8329 to the facsimile number(s) listed on this proof of service. The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine. [[F.R.Civ.P. 5(b)(2)(D)].

   I declare under penalty of perjury, under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed On: __1/3/03__

By: _____*/signature/*_____
LAURIE MILLER

1

TRANSMISSION VERIFICATION REPORT

9:59
TIME : 01/03/2003 ~~11:09~~

```
DATE,TIME            01/03 ~~11:02~~ 9:52
FAX NO./NAME         5335847
DURATION             00:07:46
PAGE(S)              25
RESULT               OK
MODE                 STANDARD
                     ECM
```

```
DATE,TIME            01/03 ~~11:02~~ 9:52
FAX NO./NAME         5335847
DURATION             00:07:46
PAGE(S)              25
```