















JOEH   1/24/03   9:32
3:97-CV-01547   WALKER V. SAN DIEGO CITY OF
*190*
*MEMOPP.*

1  LATHAM & WATKINS LLP
     Kenneth M. Fitzgerald (142505)
2     Shannon Z. Petersen (211426)
   701 B Street, Suite 2100
3  San Diego, California  92101-8197
   Telephone:  (619) 236-1234
4  Facsimile:  (619) 696-7419

5  Attorneys for Amicus Curaie
   National Football League

6

7

8                UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11 | BEVERLY WALKER, WHEELCHAIR        | CASE NO. 97cv1547 BTM (LAP)
   | ACCESS NOW TODAY ON BEHALF OF     |
12 | NOEL NEUDECK, KATHLEEN LENTINI    | AMICUS CURAIE THE NATIONAL
   | AND ITS MEMBERS, ALISA            | FOOTBALL LEAGUE'S MEMORANDUM OF
13 | SCHUMAN, and ROBERT HANN, by      | POINTS AND AUTHORITIES IN
   | and through his Guardian Ad       | OPPOSITION TO PLAINTIFFS' MOTION
14 | Litem, JEB HANN,                  | TO ENFORCE SETTLEMENT

15 |              Plaintiffs,

16 |      v.                           | Date: January 17, 2003
                                       | Time: 2:00 p.m.
17 | CITY OF SAN DIEGO,                | Hon. Leo S. Papas
   | TICKETMASTER, ACE PARKING,
18 | CHARGERS FOOTBALL COMPANY, SAN
   | DIEGO PADRES BASEBALL CLUB,
19 | SPORTS ARENA 2000,

20 |              Defendants.

21

22

23

24

25

26

27

28

Latham & Watkins
ATTORNEYS AT LAW
SAN DIEGO
SD\367522.1

190

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................1

II. FACTS ......................................................3

    A.    The City's Agreement With the NFL. ..................3

    B.    The Intent of The Settlement Agreement. ..............4

    C.    Super Bowl Preparations and Seating
        Requirements ........................................7

III. DISCUSSION ...............................................10

    A.    The NFL And Super Bowl Are Not Governed By
        The Settlement Agreement. ..........................10

    B.    The ADA Does Not Require Application of the
        Settlement Agreement to the Super Bowl. .............15

    C.    Plaintiffs Have No Right To Dictate Super
        Bowl Preparations. .................................16

    D.    The Court Cannot Void The NFL's Use Permit. .........17

    E.    The Plaintiffs Have An Adequate Remedy At
        Law. ...............................................20

    F.    "Enforcing the Settlement Agreement" Would
        Adversely Affect The NFL, The Super Bowl,
        And The Public Interest. ...........................21

IV. CONCLUSION ...............................................23

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

i

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

# TABLE OF AUTHORITIES

## FEDERAL CASES

Access Now, Inc. v. South Florida Stadium Corp.
  161 F.Supp.2d 1357 ................................. 15

Brobeck, Phleger & Harrison v. Telex Corp.
  602 F.2d 866 ..................................... 12

Cramer v. Consolidated Freightways, Inc.
  255 F.3d 683 .................................... 13

In re Crystal Properties, Ltd.
  268 F.3d 743 ................................... 12

Federal Trade Comm'n v. Affordable Media, LLC
  179 F.3d 1228 .................................. 21

Independent Living Resources v. Oregon Arena Corp.
  1 F.Supp.2d 1159 .............................. 15

Louie v. National Football League
  185 F.Supp.2d 1306 ........................... 12

Publications Int'l, Ltd. v. Meredith Corp. 8
  88 F.3d 473 ................................. 21

Sammartano v. First Judicial District Court
  303 F.3d 959 ............................. 21, 22

United States v. First Nat'l. City Bank
  379 U.S. 378 .............................. 21

Wang Labs., Inc. v. Ma Labs.
1994 WL 618580, 1 (N.D. Cal.) ................... 20

## STATE CASES

Apra v. Aureguy
  55 Cal.2d 827 .............................. 14

Dollar v. International Banking Corp.
  10 Cal.App. 83 ............................ 13

Golden West Baseball Co. v. City of Anaheim
  25 Cal.App.4th 11 .................... 17, 18, 19, 20

Jackson v. Donovan
  215 Cal.App.2d 685 ...................... 14

Wilkison v. Wiederkehr
  101 Cal.App.4th 822 .................... 20

Latham & Watkins
ATTORNEYS AT LAW
SAN DIEGO

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

STATUTES

28 C.F.R. Ch. 1 ............................................... 11

Fed. R. Civ. P. 24 ............................................ 3

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

# I. INTRODUCTION

Plaintiffs filed this action to make Qualcomm Stadium accessible to the disabled. In settling the action, the City agreed to make physical renovations to the stadium to ensure physical access, and the City, Chargers and Padres agreed to employ various mechanisms to ensure that disabled fans could buy tickets for appropriate seats, along with the general public. That fundamental intent of the parties is reflected throughout their Settlement Agreement and Mutual Release ("Settlement Agreement"). Nowhere in the Settlement Agreement did the parties agree that the Super Bowl would be governed by its requirements.[1] Instead, those requirements are limited to the City, the Chargers, Padres, and Event Sponsors, defined as parties staging stadium events for which tickets are sold to the general public. Because tickets to the Super Bowl are not sold to the general public, the NFL is not an Event Sponsor, and is otherwise not bound by the agreement.

The NFL independently distributes Super Bowl tickets to the disabled, provides sufficient disabled seating to accommodate all disabled Super Bowl ticket holders, and otherwise ensures that all disabled Super Bowl attendees are able to attend and enjoy the game as any other fan. Because the NFL takes these measures independently, the requirements of the Settlement Agreement are both superfluous and unnecessary. More importantly, if applied to the Super Bowl, they simply make no

---

[1] Indeed, years before the Settlement Agreement was entered, the City promised the NFL it would have exclusive control of seating and ticket distribution for this year's Super Bowl.

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

1

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1 sense. It is clear that the parties did not include the Super
2 Bowl in the Settlement Agreement, either explicitly or
3 implicitly. To interpret the Settlement Agreement to apply to
4 the Super Bowl would render meaningless many of its provisions.
5 Doing so is akin to fitting a square peg into a round hole.
6 Because the Settlement Agreement does not govern the Super Bowl,
7 plaintiffs' demands to "enforce the Settlement Agreement" should
8 be rejected, and the Court should declare that the Settlement
9 Agreement does not govern this unique event.

10 Though the intent of the parties was to assure ADA
11 compliance at the stadium, plaintiffs are using the Settlement
12 Agreement to obtain preferences and additional benefits to which
13 they are not entitled under the ADA. They are also, in the
14 guise of enforcing the Settlement Agreement against the City,
15 attempting to dictate the NFL's ticketing and seating
16 arrangements for the Super Bowl. Long before entering into the
17 Settlement Agreement with the plaintiffs, the City agreed to
18 give the NFL exclusive control over seating and ticketing.
19 Plaintiffs cannot retroactively undo that agreement by
20 effectively imposing the Settlement Agreement on the NFL. If
21 the Settlement Agreement applies to the Super Bowl (which it
22 does not), and if it has been breached the plaintiffs have an
23 adequate legal remedy against the City. They are not entitled
24 to equitable relief which would impact the NFL. Thus, at a
25 minimum, the Court should deny plaintiffs' continuing demands
26 which impact the Super Bowl, and limit plaintiffs to whatever
27 legal remedies they may have for any breach of the Settlement

28

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

2

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1 | Agreement, to be determined after the game is played.[2]

2 | ## II.  FACTS

3 | ### A.   The City's Agreement With the NFL.

4 | The City reached a basic agreement with the NFL for
5 | the NFL's use of Qualcomm Stadium for Super Bowl XXXVII in 1998,
6 | over two years prior to the 2001 Settlement Agreement.  Steeg
7 | Dec. ¶ 2.  Under that agreement, the City agreed to provide the
8 | NFL with the exclusive right to distribute Super Bowl tickets,
9 | and exclusive control of the stadium during the weeks leading up
10 | to, during and immediately after the game.  Id., Exh. A.  Having
11 | exclusive control of ticket distribution and seating in the
12 | stadium was critical to the NFL.  Id.  Indeed, had the City
13 | imposed the Settlement Agreement's ticketing or seating
14 | requirements on the NFL, as plaintiffs seek to now, the NFL
15 | would likely have awarded the Super Bowl to another city.  Steeg
16 | Dec. ¶ 2.

17 | Effective January 1, 2003, the City and the NFL
18 | finalized and executed the Use Permit for the stadium.  That Use
19 | Permit incorporates the earlier, 1998 agreement that the NFL has
20 | exclusive control of the stadium.  See Steeg Dec., Exh. C at 7
21 | § 2.3.  The Use Permit also reiterates the NFL's exclusive
22 | rights to distribute Super Bowl tickets, as promised in 1998 by

---

[2] The NFL submits this brief as amicus curaie, and hereby
stipulates that the Magistrate Judge may decide plaintiffs'
motion to enforce settlement, insofar as any decision on that
motion does not impose any requirements on the NFL.  The NFL
does not waive any argument that this Court lacks jurisdiction
to enter injunctive relief binding on the NFL, and reserves
its rights to intervene under Fed. R. Civ. P. 24 and to appeal
the Magistrate's decision, if necessary.

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

3

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1  the City.  Id.

2      B.    **The Intent of The Settlement Agreement.**

3          As the Court observed on January 9, 2003, the purpose
4  of the Settlement Agreement was to achieve compliance with the
5  ADA as closely as reasonably possible, given the age and
6  configuration of Qualcomm Stadium.  Reporter's Transcript of
7  Proceedings, January 9, 2003, at 3:3-5.  The clear intent of the
8  parties was to make modifications and implement them such that
9  the stadium accommodates the disabled at all events held there.
10 Id. at 3:19-23.

11         The Settlement Agreement binds the City; it does not
12 bind the NFL.  Moreover, nothing in the Settlement Agreement
13 indicates an intent to apply its requirements to the Super Bowl,
14 which is administered differently from all other events held at
15 the stadium.  Thus, nowhere in the Settlement Agreement does it
16 say that the Super Bowl or NFL is governed by its requirements.
17 Indeed, the only mention of the Super Bowl is an express
18 exemption from the general requirement, applicable to all other
19 stadium events, that discounted tickets be provided to the
20 disabled.  Exh. T-3 ¶ 11.

21         The Settlement Agreement is replete with requirements
22 and mechanisms to ensure that regular users of the stadium (The
23 Chargers, Padres, Aztecs and Holiday Bowl) provide ticket
24 availability and physical access to the disabled.  For example,
25 the Agreement states that the "City shall cause SDSU Football
26 Team and the Holiday Bowl to establish a special telephone
27 number which shall be available exclusively for the sale of
28 disabled seating at the Stadium."  Settlement Agreement at D-3

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

4

· NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1   ¶ 4.  Such a telephone number makes no sense if applied to the
2   Super Bowl, because Super Bowl tickets are not sold by
3   telephone.  The Agreement also directs the City to use
4   "commercially reasonable efforts to cause the SDSU Football Team
5   and Holiday Bowl to include information regarding disabled
6   seating and disabled parking locations in brochures and other
7   material."  Settlement Agreement at T-3 ¶ 10.  Nowhere in the
8   Settlement Agreement, however, is the City required to take any
9   steps regarding the Super Bowl.

10          All of the provisions dealing with sales of seating
11  for the disabled assume that there is a general public sale of
12  such tickets, on a first-come, first-served basis.  For example,
13  Paragraph 1(a) of Exhibit B states that "Semi-Ambulatory Seats
14  shall be withheld from sale to the general public and may be
15  sold only to persons requesting seats for persons with mobility
16  impairment . . . During the Two-Day Window, all Semi-Ambulatory
17  Seats and companion seats thereto may be sold to the general
18  public."  Paragraph 1(c) of Exhibit B also refers to what
19  happens in the event of a "Sell-Out," which is defined as "any
20  event held at the Stadium for which seats become unavailable for
21  purchase by the general public from the Event Sponsor."  An
22  Event Sponsor is defined to mean "any person or entity
23  (including City) that produces or promotes an event at the
24  Stadium for which tickets are made Available for Sale to the
25  general public, including, but not limited to, the Chargers,
26  Padres, the San Diego State University football team . . ., the
27  Holiday Bowl and any other sponsor, tenant, promoter licensee,
28  or occupant of the Stadium."

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

5

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1    In their brief, plaintiffs misstate the text of this
2 provision, by omitting the phrase "including, but not limited
3 to," and arguing that "any other sponsor, tenant, promoter,
4 licensee, or occupant of the Stadium" is an "Event Sponsor."
5 See "Plaintiffs' Reply to Application for Injunctive Relief" at
6 4.  According to plaintiffs, "[t]his is a very general term that
7 includes private parties and the Super Bowl Sponsors." Id.
8 Critically, plaintiffs omit the limiting language that Event
9 Sponsors are parties producing or promoting events to which
10 tickets are made Available for Sale to the general public,
11 "including but not limited to" the general unnamed parties.  By
12 omitting this language, plaintiffs simply misstate the meaning
13 of this provision.

14    In the event of a Sell-Out, the Semi-Ambulatory Seats
15 and companion seats thereto "may be released for sale to the
16 general public on the Sell-Out Date."  These provisions pre-
17 suppose that tickets are sold to the general public, and their
18 purpose is to ensure the disabled have the ability to obtain
19 suitable seats before members of the general public rush to buy
20 them.  The obvious intent behind the definitions of Event
21 Sponsor, Available for Sale and Sell-Out, and the Agreement
22 generally, was to provide a framework by which disabled fans
23 could utilize special seats constructed for them at events where
24 the public could otherwise beat them to those seats by
25 purchasing tickets before they had the chance.  Where there is
26 no sale of tickets to the general public (as with the Super
27 Bowl), those provisions make no sense.  The general public has
28 no opportunity to buy Super Bowl tickets in advance of the

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

6

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1 disabled; indeed, the general public has no opportunity to buy
2 Super Bowl tickets at all, unless they win the very few seats
3 awarded through the NFL's Super Bowl ticket lottery. The
4 parties, therefore, did not intend these requirements to apply
5 to the Super Bowl.

6 The provision allegedly modified by the City's
7 agreement to provide 50 free pairs of tickets to plaintiffs "to
8 all non-Padres events," Exhibit C, also presupposed that tickets
9 were sold to the general public.[3] Thus, the parties required
10 Wheelchair Seating Pairs to be reserved for sale to wheelchair
11 users and companions, until the Two-Day Window or any Sell-Out
12 Date. Since no sales of Super Bowl tickets are made to the
13 general public, these provisions plainly do not apply. That
14 requirement, to ensure that Weelchair Seating Pairs are withheld
15 from public sale so that disabled patrons would have the
16 opportunity to purchase them, makes no sense if applied to an
17 event where there is no public sale of tickets.

18 **C.** **Super Bowl Preparations and Seating Requirements**

19 In terms of seating and security, the Super Bowl is
20 unlike any other event staged at the stadium. Tickets to the
21 Super Bowl are not sold to the general public. The number of
22 seats necessary to accommodate disabled ticket holders is set to
23 ensure all such disabled ticketholders have an appropriate seat.
24 Unlike a general event, where a set number of disabled seats are

25

26 _____
[3] Plaintiffs claim the City made this agreement in a letter from
27 Eugene Gordon. Mr. Gordon's letter says no such thing. It
says only that the 50 free pairs of tickets would be provided
28 to plaintiffs for Chargers games.

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

7

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

set aside and sold in advance, the NFL exchanges disabled seats for any disabled fan holding a legitimately obtained ticket for a regular seat. In other words, the NFL matches individual guests' needs to specific seats tailored to those needs. The NFL publishes its own Disability Accessibility Guide and distributes it to fans. See Steeg Dec., Exh. B. On the day of Super Bowl XXXVII, the NFL will have over 100 workers at Qualcomm Stadium helping to meet the needs of persons with disabilities, and ensuring that they enjoy the event. Finally, though the NFL does not sell Super Bowl tickets to the general public on a first-come, first-served basis, it does award a generous percentage of the very few tickets awarded through a lottery to disabled fans. See Steeg Dec. ¶¶ 7-8. The NFL's disability access initiatives have been praised by the United States Justice Department, and numerous outside parties. Id. ¶4. Unlike general users of the Stadium, the NFL independently undertakes comprehensive measures to ensure that disabled fans have access to Super Bowl tickets, and physical access at the Super Bowl stadium itself. See Steeg Dec. ¶¶ 3-8; 12, 14-18. In sum, the NFL's disability access measures meet or exceed those required of the City or Event Sponsors under the Settlement Agreement.

Nevertheless, the plaintiffs have complained that changes to the seating configuration for the Super Bowl violate the Settlement Agreement, and they contend its myriad requirements apply to the Super Bowl. Nowhere does the Settlement Agreement refer to the Super Bowl, other than to exclude it from a discounted ticket requirement. Moreover,

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

8

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1  application of the Settlement Agreement to the Super Bowl is

2  both nonsensical and unnecessary, because of the unique manner

3  in which that event is staged.  The general seating requirements

4  and ticket allocation procedures applicable to the Chargers,

5  Padres, and Event Sponsors are both inapplicable by their terms,

6  and unnecessary to achieve the intent of the parties as

7  expressed in the Settlement Agreement.  The NFL complies with

8  the ADA.  Therefore, the requirements of the Settlement

9  Agreement, whose purpose is to effectuate ADA compliance, do not

10  apply to the Super Bowl.[4]

11      The NFL is out of time to reconfigure the stadium to

12  plaintiffs' wishes or to reallocate tickets in the manner they

13  demand.  Forcing either measure would inflict significant

14  hardship on the NFL, its broadcast partners and Super Bowl

15  guests.  Anderson Dec. ¶¶ 2-5.  Because the Settlement Agreement

16  does not apply to the Super Bowl, because applying it to the

17  Super Bowl is both nonsensical and unnecessary to effectuate its

18  purpose, and because doing so would prejudice the NFL and

19  interfere with its rights under its pre-existing commitments

20  from the City which led to the decision to stage the event here,

21  plaintiffs' demands must be denied.

22  / / /

23  / / /

24

25  _____

    [4]  Neither plaintiffs nor any other person has made a claim
26  against the NFL for violating the ADA.  Thus, plaintiffs have
    no standing to challenge the NFL's Super Bowl preparation or
27  seating configuration.  Plaintiffs' only claim, if the
    settlement is deemed to apply to the Super Bowl, is a claim
28  against the City for breach of that agreement.

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

9

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

## III. DISCUSSION

**A. The NFL And Super Bowl Are Not Governed By The Settlement Agreement.**

The NFL did not sign the Settlement Agreement, nor was it asked to. The NFL was not asked to adhere to stadium arrangements binding on the Chargers, Padres and Event Sponsors, because the NFL had a pre-existing contractual right to stadium and ticket control, and because the NFL is not an Event Sponsor under the Settlement Agreement. Had plaintiffs wished to dictate Super Bowl seating configuration, inspect Super Bowl facilities, or obtain Super Bowl tickets, they could have attempted to negotiate such requirements in the Settlement Agreement. Instead, although they explicitly contemplated a Super Bowl in Qualcomm Stadium, plaintiffs failed to include it within the definition of Event Sponsor, and they failed to include it in any of the requirements applicable to other stadium users. These facts alone demonstrate that the parties did not intend for the Settlement Agreement's requirements to apply to the Super Bowl.

The Super Bowl is a unique event. Tickets are not sold to the general public on a first-come, first-served basis, as they are for Padres, Chargers and Aztec games, and other stadium events. Other than by invitation, the only manner in which anyone, disabled or not, can obtain Super Bowl tickets from the NFL, is by winning a lottery, through which a small number of tickets (1,056) are awarded to a lucky few. Of those tickets awarded through lottery, over 5% are specifically set-

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

10

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

aside for the disabled.[5] Disabled fans who obtain Super Bowl
tickets will be specially accommodated by the NFL, which
provides disabled seating to all disabled ticket holders through
its ticket exchange. In other words, in both its ticket
distribution system (which does not violate the ADA (<u>Louie v.
National Football League</u>, 185 F. Supp. 2d 1306 (S.D. Fla.
2002)), and in its allocation of seats on a one-on-one, need-
based basis, the NFL provides disabled access to the Super Bowl.
Its efforts in this regard have been commended by the United
States Justice Department. Plaintiffs do not contend the NFL
violates the ADA, nor can they legitimately do so.

Clearly, the parties to the Settlement Agreement did
not intend for the general requirements of that agreement to
apply to this unique event. The requirements and mechanisms in
the Settlement Agreement exist to ensure that the disabled have
both equal access to Qualcomm Stadium and a fair opportunity to
purchase tickets available to the general public. The NFL
provides that access and opportunity, and the NFL independently
meets ADA requirements. In other words, while the Settlement
Agreement's requirements were necessary to ensure ADA compliance
generally, they are superfluous (and nonsensical) if applied to
the uniquely disabled-friendly Super Bowl.

When interpreting the Settlement Agreement, a
contract, "every provision of a contract should be examined to

---

[5] There is no ADA provision specifically applicable to ticket
allocation; however, for new stadiums, ADA regulations
generally require only 1.1% of seating capacity to be devoted
to the disabled. <u>See</u> 28 C.F.R. Ch. 1, pt. 36, App A at
4.1.3(19)(a).

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

11

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

determine the meaning and intention of the parties," and "the
meaning of words contained in a contract is to be determined not
from a consideration of the words alone but from a reading of
the entire contract." Brobeck, Phleger & Harrison v. Telex
Corp., 602 F.2d 866, 872 (9th Cir. 1979). "A written contract
must be read as a whole and every part interpreted with
reference to the whole." In re Crystal Properties, Ltd., 268
F.3d 743, 748 (9th Cir. 2001). A contract, therefore, should be
interpreted "in a manner that makes the contract internally
consistent." Brobeck, 602 F.2d at 872. When read as a whole
and interpreted for internal consistency, it is clear that the
Settlement Agreement does not apply to the Super Bowl or the
NFL.

        The agreement repeatedly and consistently reflects an
intent to apply only to events where tickets are sold publicly.
For example, the terms of the Agreement apply only to Event
Sponsors, who are defined as those who produce or promote an
event at the Stadium "for which tickets are made Available For
Sale to the general public." The Agreement defines "Available
for Sale" as seats "made available for sale to the general
public." Id.; see also id. at T-3 ¶ 11 (requiring that
discounted tickets be provided to the disabled except for the
Super Bowl and for "any events where tickets are not available
for purchase by the general public"); id. at O-1 (requiring the
City to designate an Americans with Disabilities Act ("ADA")
Coordinator to be present at the Stadium when the Stadium "is
open to members of the general public"). The Super Bowl is only
mentioned once in the entire Settlement Agreement. There, it is

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

12

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

specifically _excluded_ from the requirement that discounted
tickets be provided to the disabled.  Exh. T-3 ¶ 11 (City shall
cause Stadium Event Sponsors to provide 50% discount for "all
events at the Stadium _other than_ Chargers' events, _the Superbowl_
[sic], post-season Padres games _and any events where tickets are_
_not available for purchase by the general public._") (emphasis
added).  That specific expression, recognizing the Super Bowl as
an event for which tickets are not sold to the general public
and explicitly exempting the Super Bowl, informs the more
general provisions which do not, by their terms, apply to the
Super Bowl.

If the parties in their contract have specifically
named one item or if they have specifically enumerated several
items of a larger class, a reasonable inference is that they did
not intend to include other, similar items not listed.  See
Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 701 (9th
Cir. 2001).  The Settlement Agreement specifically covers
Chargers' games, Padres' games, SDSU football games, and the
Holiday Bowl.  Because the NFL and Super Bowl are not
specifically enumerated, the reasonable inference is that they
were not intended to be covered by the Settlement Agreement.
"[O]ne clause of a contract, apparently conclusive as to a
particular thing, may be enlarged or limited by other provisions
of the instrument upon the same subject."  Dollar v.
International Banking Corp., 10 Cal. App. 83, 87 (1909).  The
only place where the Super Bowl is mentioned in the Settlement
Agreement, it is specifically excluded from a discount ticket
requirement.  This exclusion is enlarged elsewhere by the

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

13

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

general terms of the Agreement, which do not to cover the Super Bowl. "In the absence of substantial parol evidence tending to solve ambiguity, terms of a writing will not be extended by implication." Apra v. Aureguy, 55 Cal.2d 827, 830 (1961). The fact that the Super Bowl is specifically excluded in one provision cannot be extended by implication to mean that the other provisions of the Settlement Agreement apply to the Super Bowl. Finally, the "specific provisions in an agreement prevail over those that are general, if inconsistent with the general provisions. Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." Jackson v. Donovan, 215 Cal. App. 2d 685, 691 (1963). Here, the specific provision identifying the Super Bowl as an event to which tickets are not sold to the general public defeats any argument that it is, or that is otherwise governed by the Settlement Agreement.

The Settlement Agreement requires the City to ensure that its protections are applied to events other than Padres and Chargers games, but it never mentions the NFL or the Super Bowl. For example, the Agreement states that the "City shall cause SDSU Football Team and the Holiday Bowl to establish a special telephone number which shall be available exclusively for the sale of disabled seating at the Stadium." Settlement Agreement at D-3 ¶ 4. The Agreement also directs the City to use "commercially reasonable efforts to cause the SDSU Football Team and Holiday Bowl to include information regarding disabled seating and disabled parking locations in brochures and other

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

14

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1  material." Settlement Agreement at T-3 ¶ 10. Nowhere in the

2  Settlement Agreement, however, is the City required to take any

3  steps regarding the Super Bowl. Again, had they intended the

4  Settlement Agreement to apply to the Super Bowl, they would have

5  said so explicitly, and they would not have defined Event

6  Sponsor, Available for Sale, and Sell-Out as they did, since

7  those definitions do not fit the Super Bowl.

8      **B.   The ADA Does Not Require Application of the Settlement**

9           **Agreement to the Super Bowl.**

10          The ADA does not give preferences to the disabled.  It

11  only guarantees equal access.  Disabled fans who want to attend

12  a football game, for example, are not "entitled to a benefit

13  which exceeds that available to the general public." Access

14  Now, Inc. v. South Florida Stadium Corp., 161 F. Supp. 2d 1357,

15  1367 (S.D. Fl. 2001).  "The Act does not require a facility to

16  afford a disabled guest a greater opportunity to purchase seats

17  than his able-bodied counterpart." Id.  To assert a claim under

18  the ADA, the plaintiffs must show that they were "denied access"

19  to Qualcomm Stadium "based solely" on their disabilities, in

20  other words that they were denied equal access.  Id.; see also

21  Independent Living Resources v. Oregon Arena Corp., 1 F. Supp.

22  2d 1159, 1169 (D. Or. 1998) (holding that "the ADA ordinarily

23  does not require (as opposed to allow) an arena operator to give

24  persons with disabilities a special right to purchase tickets

25  for events if comparable tickets would not be available to a

26  person without disabilities").

27          Plaintiffs here are trying to obtain benefits

28  exceeding those provided by the ADA.  Under the guise of

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

15

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1   enforcing the Settlement Agreement, they are really seeking

2   special preferences for themselves and, although they are not

3   class representatives, for some unidentified members of the

4   disabled community.  As the Court noted, the purpose of the

5   Settlement Agreement was to ensure ADA compliance for stadium

6   events.  By misapplying that agreement's requirements on a

7   unique event which already accommodates the disabled, plaintiffs

8   are attempting to do more than obtain ADA compliance; they are

9   seeking a windfall in the form of Super Bowl tickets, and

10  control over ticket distribution - when the City previously

11  conferred exclusive ticketing distribution rights to the NFL.

12  Because the plaintiffs are seeking more than what the ADA

13  requires, their demands must be denied.

14      C.    **Plaintiffs Have No Right To Dictate Super Bowl**

15            **Preparations.**

16            Under its Use Permit from the City, the NFL has

17  exclusive control of Qualcomm Stadium.  Until 72 hours after the

18  game, the NFL may exclude anyone, including the plaintiffs, from

19  entering Qualcomm Stadium.  Because the NFL is not a party to

20  the Settlement Agreement, that Agreement does not grant the

21  plaintiffs any rights over the NFL with respect to the Super

22  Bowl, including inspection rights.  At best, the plaintiffs can

23  recover damages against the City for any failure to require the

24  NFL to provide plaintiffs with inspection rights.

25            The Settlement Agreement does not grant the plaintiffs

26  approval rights over any changes to Qualcomm Stadium.  "The

27  provisions of Section 3 are not intended to grant to the

28  Plaintiffs any approval rights with respect to the design or

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

16

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

construction of any Modifications; rather such provisions are intended to give the Plaintiffs a mechanism pursuant to which they can monitor the City's compliance with the terms of this Agreement." Settlement Agreement, Exh. A at 5. Therefore, any injury claimed by the plaintiffs must be limited to the injury, if any, which would result from being denied the opportunity to inspect the Stadium. If plaintiffs are entitled to inspect Super Bowl facilities, any loss of that inspection right can be remedied by an award of damages. Accordingly, plaintiffs have an adequate remedy at law. Since plaintiffs have no veto rights over the temporary alterations at the stadium, there is no point to their inspection. At this late date, accommodating such inspection will violate the NFL's exclusive control of the stadium, and interfere with game preparations. See Steeg Dec. ¶ 19.

### D. The Court Cannot Void The NFL's Use Permit.

At the January 15 hearing concerning the adequacy of a legal remedy for any wrongful denial of Super Bowl tickets, plaintiffs' counsel cited Golden West Baseball Co. v. City of Anaheim, 25 Cal. App. 4th 11 (1994), and argued that under Golden West, the Use Permit issued by the City to the NFL is void, because it is inconsistent with plaintiffs' rights under the Settlement Agreement. Plaintiffs argue from this premise that, because the Use Permit is void, the City must issue a second, compliant Use Permit that requires the NFL to provide tickets to plaintiffs.

Plaintiffs misapprehend the chronology of the City's agreements. In fact, the NFL first obtained the City's

Latham & Watkins
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

17

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1  agreement to give exclusive control over ticketing and stadium

2  operations for the Super Bowl.  Years later, the City entered

3  into the Settlement Agreement with plaintiffs.  By plaintiffs'

4  logic, it is the NFL that would have the right to void the

5  Settlement Agreement with plaintiffs, rather than the plaintiffs

6  having the right to void the Use Permit issued by the City.  In

7  truth, neither result is warranted.  Instead, the NFL has an

8  agreement with the City, and the plaintiffs have their agreement

9  with the City.  If the City breached one agreement by entering

10 into the other, the aggrieved party has a claim for breach of

11 contract.  That party does not have the legal right to dictate

12 the terms of a subsequent and inconsistent agreement.

13          Plaintiffs misread the Golden West case.  In Golden

14 West, Golden West Baseball Company (the Ball Club) sued the City

15 of Anaheim (Anaheim) alleging that Anaheim improperly issued

16 conditional use permits allowing permanent development in the

17 stadium's parking area that was already subject to easements or

18 licenses agreements with the Ball Club.  See Golden West, 25

19 Cal. App. 4th at 18-19.[6]  The trial court declared that the

20 development (as planned) would breach the Ball Club's

21 agreements.  Id. at 20.  The trial court also ruled that, by

22 issuing conditional use permits to the developer, Anaheim had

23 breached one of the agreements.  Id. at 21.  The Ball Club was

24 granted both injunctive relief preventing the development and

25 _____

26 [6]  The opinion includes an extensive discussion of various
         categories of real property interests, including leaseholds,
27       easements and licenses, but the Court ultimately determined
         that the categorization of the Ball Club's rights was not
28       dispositive.

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

18

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

specific performance of the use agreements.  Id. at 19.

The Fourth District Court of Appeal reversed and
modified the trial court's judgment.  See id. at 51-52.  With
respect to the declaration of rights under the use agreement —
sought by the Ball Club — the Court of Appeal allowed more
expansive development than the trial court.  See id. at 40-42
(finding Anaheim need only provide the minimum number of parking
spaces, the trial court unreasonably limited the area in which
that minimum parking may be located, and that other proposed
developments may proceed without diminishing ingress or egress).
However, the Court of Appeal also found that Anaheim had not
breached the agreements by issuing conditional use permits, and
thereby reversed the trial court's grant of injunctive relief
and specific performance. [7]  See id. at 49-50.

The Court of Appeal did not hold that the Ball Club's
agreements rendered the City's use permits "void," as
plaintiffs' counsel suggested here.  Instead, the court reversed
the trial court's injunction and order specifically enforcing
the Ball Club's agreements, finding that "[a]n injunction to
enforce the terms of a contract may only be issued if the
contract is specifically enforceable."  Id.  Because the City
had not breached the agreements with the Ball Club, there was no
breach upon which to predicate an order of specific performance.
With respect to the contract issues, the court only went so far
as to declare the Ball Club's rights under the use agreements

_____

[7]  The Court of Appeal also quieted title in favor of Anaheim and
ruled that the 1964 and 1981 use agreements were not leases.
See id. at 51-52.

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

19

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1  regarding the proposed developments (i.e., that part of the
2  development may proceed without infringing on the Ball Club's
3  contractual rights and part may not). Id. at 51-52. In sum,
4  the court simply did not reach the issue of whether a pre-
5  existing agreement rendered an inconsistent use permit void, or
6  whether the court could somehow re-write that use permit, as
7  plaintiffs suggest this Court should do here.

8  **E.    The Plaintiffs Have An Adequate Remedy At Law.**

9          The plaintiffs have asked this Court to "enforce the
10  Settlement Agreement" by giving them free Super Bowl tickets,
11  and requiring particular ticket allocations and seating
12  configurations. Whether this claim is for injunctive relief or
13  specific performance, it must be denied because the plaintiffs
14  have an adequate remedy at law. Plaintiffs' claim that the City
15  breached the Settlement Agreement is, of course, a claim is for
16  breach of contract. "Where the law gives a party an adequate
17  remedy by way of an action in damages for breach of contract, or
18  for compensation for services rendered under it, a court of
19  equity may not grant specific performance of such a contract."
20  Wilkison v. Wiederkehr, 101 Cal. App. 4th 822, 832 (2002).

21          Plaintiffs have not shown and cannot show that the
22  remedies for a breach of the Agreement are inadequate, as they
23  must. Wang Labs., Inc. v. Ma Labs., 1994 WL 618580, *1
24  (N.D. Cal.) (finding "[s]pecific performance is appropriate only
25  when no other adequate relief is available"). The Court has
26  already held that plaintiffs have an adequate legal remedy if
27  they are wrongfully denied Super Bowl tickets. The same holding
28  applies to plaintiffs' attempts to modify the temporary seating

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

20

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

configuration and ticket distribution by the NFL. If plaintiffs
have suffered some injury because the City was required to cause
the NFL to conduct the Super Bowl differently, plaintiffs can be
made whole by an award of damages for any injuries they suffer
as a result. They are not entitled to any form of order that
alters the NFL's exclusive rights to control the stadium and
distribute Super Bowl tickets.

F.    "Enforcing the Settlement Agreement" Would Adversely
      Affect The NFL, The Super Bowl, And The Public
      Interest.

Injunctive relief may be refused where it would
adversely affect the rights of persons who are not parties to
the litigation. Publications Int'l, Ltd. v. Meredith Corp. 8,
88 F.3d 473, 478 (7th Cir. 1996). When interim equitable relief
is authorized and the public interest is involved, "courts of
equity may, and frequently do, go much farther both to give and
withhold relief in furtherance of the public interest than they
are accustomed to go when only private interests are involved."
United States v. First Nat'l. City Bank, 379 U.S. 378, 383
(1965). In "balancing the hardships" of the public interest
against a private interest, the public interest should receive
greater weight. Federal Trade Comm'n v. Affordable Media, LLC,
179 F.3d 1228, 1236 (9th Cir. 1999). A court must not only
balance the hardships of the parties, but must also consider the
effect that the granting of an injunction would have on
nonparties and on the public interest. See Sammartano v. First
Judicial District Court, 303 F.3d 959, 974 (9th Cir. 2002). This
issue "deserves separate attention" apart from the balancing of

Latham & Watkins
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

21

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

1   hardships between plaintiffs and defendants. <u>Id.</u>

2         The NFL is busy preparing Qualcomm Stadium for the

3   Super Bowl, which takes place in just nine days. Seating has

4   been configured, lighting and camera platforms have been

5   installed, and tickets have been allocated. Plaintiffs seek

6   entitlement to Super Bowl tickets and a re-allocation of such

7   tickets. However, the Court has observed that plaintiffs, who

8   are not class representatives, may not have standing to assert

9   what are essentially class action rights. Reporter's

10  Transcript, January 9, 2003 at 14:23-15:7. Instead, the issue

11  is whether those fans <u>who have</u> Super Bowl tickets are

12  appropriately accommodated. <u>Id.</u> at 15:8-10. As set forth in

13  the Declaration of James H. Steeg, those disabled fans who do

14  have Super Bowl tickets will be. Accordingly, plaintiffs have

15  no present right to inspect Super Bowl preparations, obtain

16  Super Bowl tickets for themselves or members of the disabled

17  community, or otherwise dictate terms of the City's Use Permit,

18  under the Settlement Agreement or under any other legal theory.

19         Forcing the NFL to reconfigure seating and undo the

20  temporary construction it has completed for the Super Bowl will

21  inflict hardship, and will be all but impossible at this late

22  date. Anderson Dec. ¶ 2-5. The City agreed with the NFL to

23  give exclusive control of the stadium and its seating

24  configuration years before entering into the Settlement

25  Agreement with plaintiffs. That Settlement Agreement confers no

26  right to the plaintiffs to dictate seating or ticketing for the

27  Super Bowl. Plaintiffs have not sued the NFL for violating the

28  ADA, nor can they. If the City was required to impose some

**Latham & Watkins**
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

22

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT

conditions on the NFL's control of the stadium, then the plaintiffs have their remedy against the City. They can be made whole by an award of damages against the City. However, they are not entitled to any relief which would impact Super Bowl preparations, which are now in a critical, late stage.

## IV. CONCLUSION

For the foregoing reasons, the NFL respectfully requests the Court to deny plaintiffs' motion, and declare the Settlement Agreement inapplicable to the NFL and Super Bowl.

Dated: January 17, 2003          Respectfully submitted,

                                 LATHAM & WATKINS LLP
                                   Kenneth M. Fitzgerald


By _____
                                 Attorneys for National
                                 Football League

Latham & Watkins
ATTORNEYS AT LAW
SAN DIEGO

SD\367522.1

NFL'S POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT