















JRL   3/3/03   13:07
3:97-CV-01547   WALKER V. SAN DIEGO CITY OF
*196*
*O.*

**FILED**

FEB 2 8 2003

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY WALKER, et al., | ) Civil No. 97-1547-BTM(LSP) |
| Plaintiffs, | ) |
| | ) TENTATIVE ORDER REGARDING |
| v. | ) OUTSTANDING REMEDIATION ISSUES |
| | ) |
| CITY OF SAN DIEGO, et al., | ) |
| | ) |
| Defendants. | ) |

This Tentative Order incorporates the attached chart, which outlines remediation to be completed by Defendant City of San Diego (hereafter "City"), and further briefing required of the parties.

1.  All briefing required by the parties shall be filed on or before <u>March 14, 2003</u>.  The briefing required pertains to items: A, E, F, H, I, J, K, L, M, N, O, R, S, aa, bb, dd, 4, 11, 12, 14, 17, 18 and 20.  A hearing will be held on <u>March 24, 2003</u> at <u>2:30 PM</u> regarding these items.

2. An inspection at Qualcomm Stadium shall be conducted on <u>March 27, 2003</u> at <u>12:30 PM.</u>

3. The following items shall be completed by <u>April 1, 2003</u>:



1

1  B, D, G, Q, X, 2 and 6.

2       4.  There are categories of items in item C of the attached

3  chart which require different forms of action.  The items in sub-

4  paragraph C1 are to be completed by the Court's inspection on

5  March 27, 2003.

6            The items in sub-paragraph C2 are to be briefed.

7            The items in sub-paragraph C3 are exempt from further

8  action.

9       5.  Regarding all "continuing maintenance/monitoring" items,

10 i.e., those categories of items that cannot with mathematical

11 precision or objective observation be evaluated for compliance,

12 plaintiffs shall take pictures or video of alleged violations,

13 recorded with specific stadium location, date, time and event.

14 Examples of such categories include, but are not limited to, paths

15 of travel in concession areas and suites, removable seats, failure

16 to comply with accessible doors at letter labeled entrances (as

17 described in chart list item #3), etc.  Any such pictures shall be

18 sufficient to adequately identify the alleged violation and shall be

19 lodged with the court within 3 working days of the alleged violation

20 with notice (of the pictures having been taken) to the City via

21 email, fax or mail on a form to be created by the parties.  City

22 shall have an opportunity to review and respond to the allegations

23 and provide a satisfactory solution and/or justification to the

24 complaining party or request a hearing with the court.  If neither

25 a solution is reached nor a hearing is requested by City, then the

26 complaining party may request a hearing.  Sanctions will be issued

27 if appropriate, including for de minimus claims by any claimant or

28 for failure of City to properly monitor its responsibilities under

1    the Settlement Agreement.   This procedure does not preclude a
2    complaint without pictures, however, less weight will be provided to
3    complaints which are not documented.

4        6.   To the extent there are complaints regarding disabled
5    access at the Super Bowl, they will be resolved at the hearing on
6    March 24, 2003.  The parties will be provided copies of any such
7    complaints and will be afforded an opportunity to file points and
8    authorities in support or opposition.

9        7. Regarding §46, Plaza, near Gate L:   "Collectible stand"
10   (gifts/collectibles), the parties shall brief this issue with
11   appropriate references to the Settlement Agreement or related
12   documents. (The parties shall particularly address whether this
13   issue was, or was not, included in Settlement Agreement.)

14       8. Regarding Plaintiffs' Motion for Damages/Sanctions, dates
15   for briefing of plaintiffs' motion shall be set at the hearing on
16   March 24, 2003.  Among those items to be briefed, the parties shall
17   include:

18   Delay in WC seating in §§ 19-20 Field.  The parties shall brief what
19   agreement, if any, was reached regarding this issue.   Appropriate
20   documentation shall be provided as part of the briefing.

21       9. Failure of City to meet compliance deadlines shall result
22   in sanctions.

23   DATED:  _2/20/03_

24

25                                      _____
26                                      LEO S. PAPAS
                                        United States Magistrate Judge
27

28   cc:  All Parties and Counsel of Record
          Judge Barry Ted Moskowitz

## SETTLEMENT AGREEMENT ISSUES
### January 8, 2003

| __ITEM__ | __PLAINTIFFS' POSITION__ | __CITY'S POSITION__ | __COURT'S DECISION__ |
|---|---|---|---|
| A. Railing height | Lower all rails to 26 inches. Plaintiffs' requested on numerous occasions that all railings be lowered, as they all obstruct the lines of site of people with disabilities. In fact, on numerous occasions, Plaintiffs objected to railing heights in plans provided by Defendants. Plaintiffs participated in numerous site inspections with City staff, and the Court, and identified specific locations at which railings should be lowered. Further, this issue was discussed in numerous "Issues Lists". According to the Issue List of December 21, 2001, the railings at the Field Level Semi-ambulatory seats were to be **"removed."** | Under the Settlement Agreement (Exhibit "A,"paragraph 5, Exhibit "B," paragraph 4, and Exhibit "C," paragraph 2(c)), the City is only obligated to lower any railings designated by Plaintiffs' Representative which, prior to April 1, 2001, obstructed the views of patrons seated in accessible seats. Plaintiffs' Representative did not designate any rails to be lowered. Additionally, Plaintiffs reviewed the plans for modifications of the Stadium which included the installation of railings and did not object to the height of the railings. All rails at the Stadium are higher than 26 inches. (See attached letter from the architect on heights of railings at the Stadium.) The Field Level semi-ambulatory seats were installed by April 1, 2002. Accordingly, it is not possible that the matter | Plaintiffs object to the rail height in various locations and that any rails are needed at the base of the Plaza Level where WC or companion seats are located behind seating (versus stairwell). Plaintiffs shall provide to City and Court a list of locations and legal bases for their position regarding whether railing height should be lowered or railings should be entirely removed (e.g., Plaza § 59) including Plaintiffs' "issues list", i.e., evidence of objections previously provided City. City shall provide to Plaintiffs and the Court legal substantiation for its position. (The legal substantiation shall not be merely an opinion letter from an architect.) Also, Plaintiffs object to View Level handrails in horizontal versus vertical loop (see also, "M" and "bb") |

| | | was contained in the so-called December 21, 2001, "Issue List". | |
|---|---|---|---|
| B. Concession Stand Counters | Lower all counters to between 34 and 36 inches. Plaintiffs were advised on December 18, 2002 that the City would perform the modifications to the concession stands. No mention of the "concessionaires" was made. The modifications are to consist of modifying all concession stands to provide a lowered portion which is between 34" and 36" from the finished floor. The lowered portion shall be located on the concession stands so that the lowered portion does not create an obstruction in the path of travel. They should be completed before the Super Bowl. | In April 2000, all permanent concession stands were lowered per the Settlement Agreement. The stands not in compliance are the portable stands.<br><br>The City made numerous requests to its Concessionaire to make a proposal to resolve the issue, and on December 18, 2002, Plaintiffs agreed to accept the concessionaire's proposal. The proposal will be implemented no later than Feb. 1, 2003. | At the 1/9/03 inspection, Plaintiffs agreed that permanent stands had been appropriately lowered.  The remaining concerns were with the mobile concession stands.  Per Mr. Shushan's comments (with which Ms. Vandeveld concurred) at the 1/9/03 inspection, the parties agreed on 12/18/02 to a technique which would take care of the mobile stands.  The technique was to have been completed by 2/1/03. The parties shall inform the Court as to whether the discussed technique has been employed.  If yes, this issue is moot other than as to any plaintiffs' motion for damages/fees.  If no, City ordered to complete by 4/1/03.<br>(See also "V")<br>Before each event at the stadium, City shall insure compliance with requirements and thereafter maintain and monitor the same during each event. |
| C. Restrooms | Restrooms must be modified so that nearest wall is located 18 inches from center line of toilet; other modifications to make restrooms compliant, "including excessive door pressure, direction of door swing, lavatory knee clearance, self-closing valve time, | The restrooms have been modified so that the wall is located 18 inches to toilet, all seats are within inches to the floor, baby changing table heights, and coat hooks have been corrected. The only remaining item is the distance of grab bars from the walls.  18 grab | The City has "substantially" complied.<br>C1.  However, where minor adjustments and those which can be made based on mechanical (mathematical) measurements or calculations can be made, the City shall complete the modifications.  Those include, but are not limited to: height of grab bars; baby changing stations; urinals; and, toilet seat paper dispensers; timing of self-closing valves; padding on under counter pipes (knee clearance); closing pressure on restroom doors, etc. |

| | | |
|---|---|---|
| | ashtrays are protruding objects." | bars are approximately 1 5/8 inches from the wall due to the curvature of the wall instead of 1 ½ inches and would be difficult to correct. The City has substantially complied with the 1 ½ inch requirement. | A comprehensive list not possible because of the number of locations in the stadium.  If the City wishes exemption or clarification regarding specific items, it shall compile an exemption list  for examination at the time of the Court inspection.<br>Restrooms at §§ 39 (men), 48 (women), 47 and 44 (men) of View Level were inspected.<br><br>C2. Any remaining issues, including towel dispensers, shall be briefed for hearing.<br><br>C3. There are restrooms features which the court will exempt from further modification. Those areas include:<br>1. The angled (e.g., View Level § 44, 47) and lowered ceilings (those which do not meet the 80" standard - e.g., view § 48) which are not technically in compliance, but which would require structural modification. (If Plaintiffs object, City shall remove the disabled designation and and specify other disabled designated locations).<br>2. Space between wall and grab bars where wall is curved – not height (City shall specify locations).<br>3. Path of travel to/from and/or related to designated stalls when door to stall open (If Plaintiffs object, see #1 above).<br>4. Baby changing station, when lowered, creates path of travel problem (The path of travel for everyone is impeded when any baby changing station is lowered).<br>5. Width of stalls (City represents that Plaintiffs gave exemption. Do Plaintiffs agree?  If yes, specify which stalls)<br>Before each event at the stadium, City to insure compliance with requirements and thereafter maintain and monitor the same during each event. |

| | | | |
|---|---|---|---|
| | | | |
| D. Plaza 4, 7, and 37 ramps | Modify sections to install ramps for semi-ambulatory seating. Ramps currently exist at identical locations and are acceptable. The ADA Regulations specifically allow for installation of ramps with steeper slopes, as long as they do not pose a *significant* risk to the health or safety of people with disabilities. 28 CFR Sec. 36.304(d)(2).The slopes at these locations are less than the slopes at the outer concourse of the stadium. Further, if compliant slopes can be achieved with the removal of seats, the seats should be removed. Plaintiffs are entitled to Compliance with the terms of the Agreement. | A ramp was installed at Plaza 4 that is not compliant. It is not possible to install compliant ramps at Plaza Sections 7 and 37 without removing seats. | Plaintiffs will accept steeper sloped ramps at §§ 7 & 37 as those at 4, 8 & 38.  If City is unwilling, then City shall remove seats necessary to provide appropriate ramps for semi-ambulatory seating. |
| E. Install 1 more WC pair in Plaza and 1 in Press | Add these WC pairs to comply with Settlement Agreement.There are less than 154 wheelchair pairs at the Stadium. Further, although additional | Due to space constraints, 26 WC pairs rather than 28 were added in Plaza, and 33 WC pairs rather than 34 were added in Press. However, a total of 154 WC pairs were | Parties shall brief this issue.  The Court will inspect the Plaza and Press areas, if necessary.  Parties shall lodge relevant portions of documents related to this issue with appropriate comment.<br><br>(See also "H" and 18) |

| | | | |
|---|---|---|---|
| | pairs were added in the View Level, these additional pairs were to compensate for the fact that 66 pairs were not provided at the base of the Plaza (Field Level). Plaintiffs dispute that View Level seats are comparable to Press and Plaza locations. Many people with disabilities require covered spaces, such as those in the Press and Plaza. There is space to provide additional wheelchair locations, as required by the Agreement. Plaintiffs' demand Compliance with the Agreement. | added to that when the 20 in Field 18 and 19 are installed, the total will be 174 Wheelchair Seating pairs which is two more than the 172 required under the Settlement Agreement. Plaintiffs were provided this information on April 17, 2002. | |
| F. Additional Seats added in View Level and other areas of the Stadium | Add the appropriate number of disabled seating due to added seats in the View Level. The Agreement specifically requires that "if Modifications are made to the Seating at the Stadium, the City shall install in the area of the modification the number of wheelchair, transfer and semi-ambulatory seats required by the ADA and Title 24." Agreement, Par. 2, page. 4. The parties were well aware that seats would be lost during | 72 seats were added in the View Level in April 2002. These additional seats are more than offset by the 1,387 seats that were removed from the Stadium due to the installation of additional wheelchair seating. Furthermore, the View Level plans were submitted to the Plaintiffs and no comments for additional accessible seats were presented to the City. Plaintiffs only raised the issue of additional seats as it applied to the proposed expansion at the Club Level, which | Parties shall brief this issue. The Court will inspect the levels involved, if necessary. Parties shall lodge with the Court relevant portions of documents related to this issue with appropriate comment. |

| | the Modifications. In fact, the number of "seats lost" was routinely included on the Defendant's plans. Defendants are also well aware of their obligation under the Agreement to add new disabled seating if Modifications to existing seating is provided. This issue was initially raised by Plaintiffs in relation to the View Level. The Defendants lied to the Court and to the Plaintiffs. In fact, approximately 80 seats were added to the View Level. Moreover, Plaintiffs were recently made aware that more seating has been added to the Field Level, without the addition of the new disabled seating. | never occurred. | |
|---|---|---|---|
| G. Special Telephone Number | Establish a special telephone number for the sale of disabled seats. None of the special numbers were operational as of April 1, 2002 or, for that matter, December 1, 2002. | The Aztecs, Chargers, Holiday Bowl, and Padres all have special numbers for the sale of disabled seats. A special number for other events (monster truck, supercross) was delayed due to difficulties negotiating an agreement with Ticketmaster. The City believes that the special number will be operational by | The Special Telephone Number shall be operational by 4/1/03. Information to be included in Access Guide and phone number shall be provided to Court. Before each event at the stadium, City shall insure compliance with requirements and thereafter maintain and monitor the same during each event |

| | | January 31, 2003. | |
|---|---|---|---|
| H. Provide 8 transfer and comp. seats on the field level "and modify or relocate other transfer seats." | There are not 8 transfer and comp. seats on the field level. Transfer seats are not on aisle, nor do they have companion seats. Plaintiffs' would agree to the addition of seats in Sections 34, 35, 36 and 37. Wheelchair seating has displaced other disabled seating, such as Transfer Seats, designated in the Padres Schedules. The new Transfer Seats require traveling down at numerous steps. Prior to the modifications, the TS were on a level plane. This occurs in Press 4, 11, 46, 47, 55, 56. Some of these seats are contained in the Padres schedule, some only in the Chargers schedule. These need to be addressed. Transfer seats originally designated on the Padres schedule were located outside of suites/skyboxes. They are now contained inside suite/skybox areas and are no longer available to the general public. This occurs in Press 1, 5, 17, and 61. They need to be relocated. Padres current seating | There are a total of 7 transfer and companion seats and 1 transfer seat without a companion seat. 4 transfer seats are not on an aisle but are adjacent to a wheelchair space. If the space is occupied by a wheelchair, the wheelchair user would need to move to provide access to the transfer seat. This procedure is similar in wheelchair seating sections where wheelchair users must move so that companion seats can be accessed. If the Court requires the addition of 5 transfer seats on an aisle, such seats could possibly be installed in Field Level Section 12, 38 or 40. If it is true that certain disabled seats are not accurately reflected in the seating charts in the Exhibits, the Plaintiffs, Chargers and Padres need to resolve the issue. | There appear to be several areas in which transfer and companion seating are at issue. With regard to each, City and Plaintiffs shall meet before the hearing (at the stadium, if necessary) to resolve and/or narrow those areas noted below.  At the hearing, parties shall provide pictures, charts or diagrams regarding remaining disputed issues.<br><br>1. <u>Field level</u>.  Transfer seats are not on an aisle nor is there a companion seat. City contends that Field §§ 40/41, seats 12, 13, 14 are in compliance and there are also others which comply. City shall show Plaintiffs compliant locations; Plaintiffs shall inspect and provide Court with specifics regarding agreement or non-agreement.<br><br>2. <u>Press Level</u>. Wheelchair seating displaced other disabled seating, e.g., transfer seats, requiring travel down steps.<br><br>3. <u>Suites</u>.  Transfer seats originally on Padre seating schedule which were outside are now inside and thus not available to the  general public  (Press level).<br><br>4. <u>View Level</u>. WC seats have displaced TS (Do they have 36" path of travel?).<br><br>To the extent seating schedules involve the Padres or Chargers, parties shall either resolve before the hearing or provide the Court with a schedule by which it can be accomplished.<br><br>(See also 18 re View Level) |

| | | | |
|---|---|---|---|
| | schedule (June 2002) designates TS in Rows 3 and 4 in View 45, 46, 47, 48. Also, in View 1, Row 5. These were not part of the Final Schedules agreed to by the parties. New wheelchair seating pairs in View 20 and 21 have displaced previously designated TS.  While there are seats now designated as TS, they are not on aisles. Instead, they are adjacent to wheelchair locations. Need to relocate these seats or reconfigure them. Transfer seats do not have 36" POT because seats along route are designated as SA seats. This reduces the POT to about 24 inches. TS do not have arms removed in other locations. | | |
| I.  Design of Removable Seats | Provide design of removable seats in wheelchair sections. | Because of a lack of demand, Event Sponsors do not sell seats in the WC sections to persons with other disabilities. There is a sufficient number of semi-ambulatory and aisle transfer seats to accommodate persons with mobility | This issue is to be briefed.  The Court needs documentation in the Settlement Agreement regarding the obligation to provide removable seats.  The City acknowledges that there are no removable seats in the WC sections. (Regardless of the existence of the requirement, the parties shall meet and confer and provide the Court with briefing regarding a format/design and methodology to provide the same, if the need arises.) |

|  |  | impairments. Additionally, 60 Semi-Ambulatory and 4 Transfer seats are withheld from sale until event time. |  |
|---|---|---|---|
| J. Relocate accessible toilet stalls in Club Level | There is insufficient headroom in the accessible stall and therefore the stall should be moved. | The lower headroom in Club 43 is not located directly above the toilet. If the accessible stall is ordered to be moved by the Court, the restroom would need to be remodeled and one stall would need to be removed. As an alternative, a sign could be placed at the stall and at the entrance to the restroom directing people to the restrooms at Sections 33, 37, 45, and 46. | This item is to be briefed.  City is exempted from compliance with regard to stall in this location IF Plaintiffs agree. Otherwise, City shall place a sign at the stall and the entrance to the restroom directing patrons to locations of accessible restrooms. |
| K. Provide 2 TV monitors | All wheelchair and semi-amb. seats need 2 TV monitors | There are two TV monitors in the areas of wheelchair and semi-ambulatory seating. A questionable area is on the Club Level tunnel seats. As a result of the Court's inspection of the Stadium on September 13, 2002, the angle of the monitors was changed to enhance viewing. | This item is to be briefed.  Are there sufficient numbers, locations and angles to the existing TV's?  Nothing was noted by the Court at either inspection. |
| L. Tables and water fountains in picnic areas | The tables and water fountains in the picnic areas must be on an accessible path of travel. The Agreement, par. 2, requires that Modifications comply | The picnic areas have a slope which is greater than five per cent and it would be extremely difficult to reduce the slope. The accessible picnic tables are located | This item is to be briefed.  City shall provide documentation referenced at the 1/14/03 inspection to the effect that the City consultant approved picnic area locations and Plaintiffs were notified of same.  Plaintiffs shall provide documentation of their objections provided to the City, if any. |

| | | | |
|---|---|---|---|
| | with the ADA and Title 24. Sec. 4.33.3 of the ADAAG requires that wheelchair locations at tables adjoin an accessible path of travel. This does not occur at the exterior dining areas. Further, the water fountain is not "high/low", the bubbler height is incorrect and it is not on an accessible path of travel. | at the only spot which could be made level. Furthermore, the Settlement Agreement does not require the City to reduce the slope. On March 13, 2001, the plans for relocating the picnic tables were submitted to Plaintiffs and the City did not receive any comments. Furthermore, a City ADA consultant approved the concept. A high/low water fountain will be installed if not too costly. Otherwise, the existing water fountains will be removed. | If appropriate documentation is provided by City with no counter-documentation from Plaintiffs, the the location is approved.<br><br>The parties shall brief the water fountain issue. |
| M. Handrails in wheelchair sections | The handrails in the wheelchair sections must loop downward. Handrails can extend into the path of travel a maximum of three and one-half inches. Title 24, Fig. 37. (Cal.DAG 2000, p. 183). | The handrails in the new wheelchair section loop out and they comply with the code. Although not required by the Settlement Agreement, the City will nevertheless modify the handrails so that they loop downward. | This item is to be briefed.  Plaintiffs shall provide City documents to support a downward versus horizontal looping of handrail (see e.g., § 48-49 View Level, rows 5-6)<br>See also, "A" and "bb" |
| N. Signage to all accessible features | Signage to all accessible features including new elevators and lifts is required. The Agreement, Exhibit "I", par. 3 states that Defendants are to submit a proposal to Plaintiffs for signs which are required by Title 24 and/or the | Information on all accessible features is contained in the access guide and on the stadium website. Because of the numerous accessible features, a substantial number of signs would be required. The next update of the seat locator maps will | The height of signs is still in issue. The parties shall brief the issue. Parties are/were to confer on which accessible features are to be added to the sign maps.  If there is no agreement, each side shall present a proposal.<br>Is the access guide sufficient for some features?<br><br>Elevator signs have been corrected.<br><br>Before each event at the stadium, City shall insure compliance with requirements and |

| | | | |
|---|---|---|---|
| | ADA or which are reasonably necessary to provide assistance to people with disabilities. Plaintiffs believe directional signs to elevators and lifts are necessary, as well as signs to accessible entrances, and to accessible portable toilet facilities. | include the new elevators and lifts. | thereafter maintain and monitor the same during each event. |
| O. Suites | 38 suites must be modified to provide Semi-Ambulatory and wheelchair seating. On December 18, 2002, there were no semi-ambulatory seats in the suites previously identified by Defendants as "compliant." | On December 8, 2002, 40 suites had a Semi-Amb. seat and 86 suites had a Wheelchair Seating pair. 40 suites had both. (See attached list.) The Settlement Agreement does not require suites to have both Semi-Ambulatory and wheelchair seating. | (See also 17)<br><br>Example of issues, see plaintiffs list at #17, below.<br><br>The Court has significant concerns about the configuration of SA, WC and companion seating. Parties shall meet and agree on a solution, or provide the Court with diagrams or charts of alternatives.<br><br>The City also shall provide the Court, at the time of the hearing, with documents describing "rights" related to the control of suites; e.g., suites - football - 6A and baseball - 25B, etc. |
| P. New elevators | The new elevators at the east and west ends must be maintained. | During the first few months of operation, the elevators experienced operational problems. Since then, the elevators have been functioning with minimal problems. On a weekly basis, a maintenance company inspects and services the elevators. | Elevators were operational on 1/14/03 inspection.  Before each event at the stadium, City shall insure compliance with operational status and requirements and thereafter maintain and monitor the same during each event. |
| Q. Access | The City is required to | The City will retain a | The final draft of the Access Guide shall be |

| Guide | complete the Access Guide. | consultant to review the guide and update it for the next printing. | provided to Plaintiffs for review and approved for distribution by 4/1/03. The Access Guide shall include an independent location (accessible by the Court) where disabled persons can register complaints. (e.g., email address, post office box and/or similar).  City shall be responsible for costs.  Parties shall confer on process, method and format. (See e.g., C, G, U, cc, #s1, 14 & 16) |
| :-- | :-- | :-- | :-- |
| R. First aid counter | The first aid counter is a protruding object. | The City corrected the problem in November 2002. | Is this still an issue? If so, this item is to be briefed. City shall insure compliance with requirements and thereafter maintain and monitor the same during each event. |
| S. Relocate Semi-Ambulatory and Transfer Seats | Certain designated semi-amb. seats do not have a 24-inch leg space. Seats designated as Semi-amb. on Padres schedule no longer exist. Row 26 in P50, 51, 52 and 53, has been removed to accommodate new wheelchair locations. | Plaintiffs should provide a list of those seats. If any seats do not have a 24-inch leg space, different ones will need to be designated. | Parties shall meet and confer (involve Padres, if necessary) and agree by hearing date or brief the issue.  If there is no agreement, the Court shall select SA seats and City shall create 24" leg room. |
| T. Windscreens | Windscreens must be modified. The handles are unusable because they were installed incorrectly. | Springs have been added to the doors so they close automatically. Although Plaintiffs state that the door handles are not compliant, Plaintiffs approved a mock-up design prior to installation. | Sample viewed at Loge § 15. The Court confirmed that a spring-loaded door closer implemented there and at all others viewed at the 1/9/03 inspection.  The door handles all appeared to be operating properly. (Others viewed at §§ 36, 37, 42 and 44)  Before each event at the stadium, City shall insure compliance with requirements and thereafter maintain and monitor the same during each event |
| U. Path of travel in Club lounges | There is an insufficient path of travel to the rear of the lounges. | The City has instructed the concessionaire to position the tables so that there is a proper path of travel. | City shall inspect and insure before each event at stadium that the concessionaire has been informed of the path of travel requirements. City shall insure compliance with path of travel requirements and thereafter maintain and monitor the same |

| | | | during each event |
|---|---|---|---|
| V. Condiment stands | Condiment stands are protruding Objects and, in some instances, Need to be lowered. | The concessionaire previously lowered all condiment stands and placed trash cans on each side so that the stands are not protruding objects. The concessionaire will conduct another inspection and any modifications will be performed by January 25, 2003. | The "fixed" condiment stand opposite § 41, View Level, along outside walkway measured at 34". Eating bars at "Top Deck": two are accessible (34"); condiment stand (for all persons) shalll not be adjacent to the order/pick-up window but at a nearby designated area – approx 10' away (Appropriate signage shall be provided). If the condiment dispensing containers are relocated in the future to, at or immediately adjacent to, the order/pick-up window, then the counter height must be appropriately modified. (See also "B") |
| W. Stair striping | Stair striping must be performed on all stairs. | Prior to April 2002, stairs were striped. Any stairs that need to be restriped will be completed by January 25, 2003. | The striping appears to have been completed. City shall monitor and maintain the striping. |
| X. Truncated domes at curb ramps | Title 24 requires truncated domes. | On Jan. 8, 2001, Plaintiffs approved the parking lot plans with no mention made of the need for truncated domes. Truncated domes are not required for the ramps since the slopes are between 6.67% and 8.3%. Truncated domes are only required if the slopes are between 5% and 6.67%. | The City shall install round-edged, puck-like objects at a location where the curb ramps meet the path of travel (street/drive). |
| aa. Metal sheets on View Level | Metal sheets on View Level block views and must be removed. These sheets were added after the Agreement was executed. | The metal sheets in the View Level are a wind break that have been in place for many years without any complaints made to the City. | This item is to be briefed in conjunction with the railing issues. The Court inspected §§14, seat 6, row 5A and 40, at the View Level. There are similar sheets in place for virtually all View Level entrances.  The view obstruction is dependent upon the height of the patron.  A competing factor is whether the sheets provide a  legitimate wind break to |

| | | | |
|---|---|---|---|
| | | | persons in front of the sheet. (The lack of complaints is not a consideration).  This issue may depend on a decision regarding railings. - see "A". |
| bb. Handrails in View Level | The handrails in the View Level must loop downward. | The handrails were put in during the 1997 expansion, and the Settlement Agreement does not require that they be modified. However, at the City's request, Sundt Construction evaluated the handrails and concluded that they could not be modified in a manner that complies with the code. | See A and M. |
| cc. Murphy's Sports Bar | The accessible entrance must be kept open. | The City has instructed the concessionaire to keep the accessible entrance open during business hours. | City shall inspect and insure before each event at stadium that the concessionaire has been informed of the path of travel requirements and to keep the accessible entrance open during business hours. City shall insure compliance with the path of travel requirements and thereafter maintain and monitor the same during each event |
| dd. Stadium Collection Stand | Provide a lower counter and remove a step. | The concessionaire installed a temporary lower counter, and will install a permanent one. A compliant ramp was installed in this area, and it is unclear what problem is posed by the step. | The location of this item is unclear.  The parties shall brief and clarify the location for the hearing.\n\n(See also 16) |
| ee. Event tents | All event tents must be made accessible. | The Budweiser tent has been removed. Any tents set up in the future will be accessible. | This issue is moot. To the extent event tents are utilized in the future, City shall insure compliance with accessibility and path of travel requirements and thereafter maintain and monitor the same during each event |
| ff. Portable | Portable toilet facilities | In the event tents are set | Portable toilet facilities appear to have been |

| toilet facilities | must be on an accessible path of travel. | up, the portable toilet facilities will be accessible and will be located on a path of travel. | installed for the Super Bowl. No complaints regarding the portable toilet facilities have been received.. Therefore, this issue is moot. To the extent portable toilet facilities are utilized in the future, City shall insure compliance with path of travel requirements and thereafter maintain and monitor the same during each event. |
|---|---|---|---|
| 1. TTY/Assistive Listening Devices | 1. Plaintiffs dispute that 576 assistive listening devices are available.<br><br>Plaintiffs dispute that signs re: availability of TTYs/ALDs are in place.<br><br>There is no notice to suite guests of the availability of TTYs/ALDs.<br><br>Plaintiffs dispute that TTYs are in place in all required areas. | 1. The City maintains 400 ALDs at the Stadium and an additional 176 ALDs are available for use in the event they are needed. No more than 10 devices have been used at a single event. The Chargers state they sent notice to suite holders. The City will work with the Chargers regarding signs in the suites. TTYs are located in all required places. | City shall insure that the phones which have devices to assist the disabled have proper signage.<br>At the Court's inspections, TTY's were observed in all required locations.<br>The number of ALDs is presently sufficient. If complaints are received (see Access Guide), the number may be adjusted.<br>City shall insure compliance with requirements and thereafter maintain and monitor the same during each event. |
| 2. Path of travel at West End elevators. | 2. West end elevator path of travel is dangerous in subterranean drive. | 2. A building permit was issued for the path of travel to the west end elevator and the path is not dangerous. | A stop sign and concave mirror to view obstructed traffic shall be installed, maintained and monitored by City. |
| 3. Entrances | 3. Not all gate entrances are accessible. | 3. The gate entrances are accessible. | At the 1/14/03 inspection, City represented that at each labeled letter entrance, e.g. "Entrance G," there is at least one accessible door open and available, if that labeled letter entrance is open. If this is accurate, and if signs are appropriately located, then there are proportionally sufficient accessible entrances. |
| 4. Compadres Store | 4. Store has an inaccessible counter. | 4. The SA does not require the City to modify the counter. Plaintiff Walker | Parties shall brief this issue.. |

| | | acknowledged that fact and responded by stating the counter would be the subject of her next lawsuit. | |
|---|---|---|---|
| 5. Drinking Fountains | 5. Club Level requires additional high fountains. Some fountains have insufficient knee clearance. | 5. The drinking fountains have been adjusted. | This issue is moot. City shall insure compliance and thereafter maintain and monitor the same. |
| 6. Seating Charts | 6. Club Level charts must be enlarged so they are usable by people with sight impairments. | 6. The City will enlarge the Club Level charts by April 1, 2003. | City shall comply by 4/1/03. |
| 7. Ramp Doors | 7. Doors along ramps must open inward. | 7. The door to the Aztec Ticket Office has been corrected. The City will correct the other doors by April 1, 2003. The doors existed prior to the SA and no mention was made to change them. | The doors are now compliant. Before each event at the stadium, City shall insure compliance with requirements and thereafter maintain and monitor the same during each event |
| 8. Parking spaces | 8. Spaces along "fingers" are not 20 feet long. | 8. The condition has been corrected. | This issue is moot. |
| 9. Accessible Ticket Windows/ Counters | 9. Not always open during business hours. Chargers interior ticket counters are still not accessible. Both in the Gold Club and in the regular ticket offices. Instead of lowering a window at the Advance Ticket Counter, a ramp was installed at the advance ticket office. | 9. The ticket counters in the Chargers' main ticket office and the Gold Club office are compliant. The outside ticket window is always open on game days. On non-game days, people will be directed into the ticket office which has a compliant counter. With respect to the ramp, Plaintiffs reviewed plans and the | The interior ticket counters are compliant if the 36" height meets ADA requirements. The exterior ramp configuration is compliant. City shall monitor the exterior ticket windows and provide sufficient assistance, on an "as needed" basis, for disabled persons. |

| | | design prior to construction and did not express any objection to the ramp, which is accessible. | |
|---|---|---|---|
| 10. Diaper changers | 10. Should be no higher than 34" in all restrooms. | 10. The condition has been corrected. | This problem appears to have been corrected. City shall monitor compliance and insure proper height is maintained. |
| 11. Ramps | 11. Need to ensure that they have slopes of 1:14. | 11. On 12/18/02, Plaintiffs were provided a list of ramps that were added during the project. Only four of the ramps have a slope of less than 1:14 but which are greater than 1:12. The ramps which have a slope of 1:12 comply with accessibility requirements. | Parties shall brief this issue. The Court will inspect the ramps. |
| 12. Club Transfer Seats/Semi-ambulatory Seats | 12. Need to ensure they were correctly installed. | 12. It is unclear what Plaintiffs mean by this language. | Parties shall brief this issue. The Court will inspect the seats |
| 13. Trash cans at wheelchair locations. | 13. Must be affixed so they do not encroach in path of travel. | 13. The City is not aware of problems regarding obstructions caused by trash cans. | Before each event at the stadium, City shall insure compliance with the path of travel requirements and thereafter maintain and monitor the same during each event. |
| 14. Motorized accessible vehicles | 14. Two must be provided per event. | 14. At least one vehicle is provided at every event and if warranted by demand, two vehicles are provided. | One is available. How is it determined by City if another, second, vehicle is warranted?? Access Guide shall provide guidance as to how additional vehicle can be obtained and a method of registering complaints. |
| 15. Chargers ticket counter in Club Level | · Not made accessible, as required per Exhibit "K", par. 4. | .The correction has been made. | There is no ticket counter at the Club Level. This issue is moot. |

| 16. Gift Shops | 16. Ramps may be non-compliant. Path of travel inside Padres Gift shop is obstructed. Counter heights have not been lowered. | 16. The ramp is compliant. The Padres have been instructed to keep the path clear, and the counter has been lowered. | The ramps appear to be compliant. There is a compliant counter, however it is obstructed by merchandise.   City shall move the obstructions and use a register at a compliant counter. |
|---|---|---|---|
| 17. Suites | 17. Path of travel from door obstructed. No Semi-ambulatory seats. <br><br> Grab bars uneven. Phones not accessible. TVs are protruding objects. <br><br> No Path of Travel to wheelchair locations. <br><br> Portable tables have not been made available to determine if they are accessible. | 17. Defendants will insure that furniture is out of the path of travel, but Defendants have no control over how a suite licensee manages the furniture in the suite. 40 suites have Semi-ambulatory seats. The City is not aware of any uneven grab bars, telephones have been lowered and are accessible, objects have been placed under television sets, there is a path of travel to wheelchair locations in Press Level Sections 3a and 3b, and the portable tables are accessible. | (See also "O") <br><br> The Court has significant concerns about the configuration of SA, WC and companion seating. Parties shall meet and agree on a solution, or provide the Court with diagrams or charts of alternatives at the time of the hearing. With regard to moveable items that could result in path of travel obstructions, City shall to insure that before the start of each stadium event there is a clear path of travel. <br><br> City shall also provide the Court, at the time of the hearing, with documents describing the "rights" related to the control of suites; e.g., suites - football - 6A and baseball - 25B, etc. |
| 18. View Wheelchair Locations | 18. Locations at View 20-21 have Path of Travel of only 30.5" and 31" in some locations. | 18. The condition has been corrected. | Measurement performed on 1/9/03 reflected a 32" clear path of travel and is thus sufficient per Ms. Vandeveld..  However, further issues remain: There are no transfer or SA seats without WC moving to permit access.  Parties shall confer before the hearing.  If no agreement is reached, the issue is to be briefed and the Court will decide. (See also "H" and "E") |
| 19. Disabled Parking Spaces | 19. Are not visible. | 19. The disabled parking spaces are visible. | The Court has viewed the spaces and concludes that the spaces are sufficiently visible.  City shall monitor and maintain spaces to insure proper visibility and use. |
| 20. | New seats added but no | | The Court is unsure whether this is still an |

| | | | |
|---|---|---|---|
| ISSUES NOT ON LIST BUT RAISED DURING 1/9/03 INSPECTION: | disabled seating included. (Appears to have been temporary seating done for Super Bowl only) | | issue.<br>Was this part of the original Settlement Agreement? If City can substantiate removal of seats (specify #) in order to install disabled seating, then the number removed should be compared to the added and the net number should be measure of whether, what kind, and how many disabled seats should be added. |