UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY WALKER, et al., | ) Civil No. 97-1547-LSP |
| Plaintiffs, | ) ORDER GRANTING IN PART AND ) DENYING IN PART PLAINTIFFS' |
| v. | ) MOTION FOR ATTORNEYS FEES ) (DOC. # 246) |
| CITY OF SAN DIEGO, et al., | ) |
| Defendants. | ) |

Plaintiffs filed their original Complaint in 1997, alleging a plethora of Americans with Disabilities Act ("ADA") violations at Qualcomm Stadium ("the Stadium"). The claims asserted in the Complaint were settled and the terms of the settlement were memorialized in a Settlement Agreement, effective February 12, 2001. The Court approved the Settlement Agreement and, pursuant to the stipulation of the parties, retained jurisdiction to enforce its terms.

The Settlement Agreement contained dates for completion of modifications to be made to the Stadium, the majority of which were

to be completed by April 1, 2001.[1] Other modifications to the Stadium were to be completed by April 1, 2002.[2] April 1, 2002 was expected to be the "Modification Completion Date."[3] Once the Modification Completion Date was established, the "Discount Expiration Date" would also be established.[4] The Discount Expiration Date determines the commencement of the "testing procedures."[5] The testing procedures would last for the Term[6] of the Settlement Agreement.

Plaintiffs now seek attorney's fees incurred from June 14, 2001 to January 29, 2009 for assuring and monitoring that Defendant completed the modifications to the Stadium, and for preparation of the Motion for Attorney's Fees. Defendant City of San Diego ("Defendant") opposes Plaintiffs' Motion for Attorney's Fees.

---

[1] These modifications included the designation and creation of transfer seats, installation of accessible seating in the suites, lowering of railings, creation of semi-ambulatory seats, installation of television monitors, restroom modifications and path of travel modifications.

[2] These modifications included wheelchair location modifications not located in the Stadium's suites and skyboxes.

[3] As late as January 2009, the Court was informed that all of the modifications to the Stadium had not been completed. On January 15, 2009, the Court ordered that the final modifications to the Stadium that had not been completed as of that date, were to be completed by April 1, 2009.

[4] The Discount Expiration Date is defined in Section 19 of the Settlement Agreement as the date which is twelve (12) months after the date which is the later to occur of (i) April 1, 2002 or (ii) the Contract Modification Completion Date.

[5] The purpose of the testing procedures was to determine the accuracy of ticket availability and "sell-out" information.

[6] The Term of the Settlement Agreement is until (i) April 1, 2006 or (ii) four years after the Contract Modification Completion Date, which is the later to occur. Therefore, the testing procedures would last for four years after the date on which the modifications to the Stadium were completed.

Attorney's Fees Provisions of the Settlement Agreement[7]

Sections 12, 13, 14 and Exhibit U of the Settlement Agreement form the basis on which Plaintiffs request an award of attorney's from the Court.

Exhibit U states, in pertinent part:

> City shall pay the sum of (a sum certain)... as reimbursement for all legal fees... and costs incurred in connection with the Lawsuit for the ten-year period beginning with the initiation of the Lawsuit in 1997 through the Effective date, and as full payment for any and all such fees and costs which will or may be incurred by Plaintiffs in connection with this Agreement, through September 1, 2007, or such later date as is determined to be the later of the final termination date of the Agreement or the enforcement provisions of the Agreement, **except as provided in Sections 13 and 14** hereof.
> (emphasis added)

Section 12 of the Settlement Agreement states in pertinent part:

> ... City shall reimburse Plaintiffs for the fees... as well as other costs in accordance with Exhibit U... This amount shall be in complete satisfaction of any and all claims for reimbursement for such items incurred by or on behalf of Plaintiffs in connection with the Lawsuit through the final disposition and termination of this Agreement, **except as otherwise provided in Sections 13 and 14 hereof.**
> (emphasis added)

Section 13 of the Settlement Agreement states in pertinent part:

> ... In the event of any litigation or **further proceedings** between the parties hereto relating to this Agreement, the decision of the Court shall be final and non-appealable. In the discretion of the Court, the **prevailing party** in any such action may be entitled to recover reasonable attorney's fees and costs incurred in connection therewith...

---

[7] The parties entered into a "First Amendment to the Settlement Agreement & Mutual Release." That document became effective on September 2, 2005. The Court refers to the original Settlement Agreement and the "First Amendment to the Settlement Agreement" as "Settlement Agreement."

(emphasis added)

Section 14 of the Settlement Agreement states in pertinent part:

> In the event of any dispute regarding the Agreement or any Modifications made, or to be made by the City pursuant to the terms thereof, the parties agree to confer for the purpose of resolving, if possible, the dispute. If the parties hereto are unable to resolve such disputes, the matter may be referred to the Court as provided in and in accordance with the terms of Section 13 hereof.

## The Court Held "Further Proceedings" Regarding the Settlement Agreement

Plaintiffs argue that Section 13 of the Settlement Agreement allows for the award of additional attorney's fees over and above the sum certain referred to in Exhibit U to the Settlement Agreement. Specifically, at the time the Settlement Agreement was executed, Plaintiffs assert that they were concerned about future problems that might arise with regard to the completion of the modifications to the Stadium, above and beyond the anticipated completion effort. Therefore, they envisioned that their attorney would have to spend more time than anticipated by the parties to ensure that Defendant complied with the Settlement Agreement. As a result, the parties included Section 13 in the Settlement Agreement, which contemplates compensation for "further proceedings" needed to enforce compliance with the Settlement Agreement.

Defendant contends that the sum certain referred to in Exhibit U to the Settlement Agreement was intended to include future attorney's fees that might be incurred by Plaintiffs' in connection with the lawsuit and Settlement Agreement, except as provided in Sections 13 and 14 of the Settlement Agreement. Specifically,

Section 13 provides that "(i)n the event of any litigation or *further proceedings* between the parties relating to the Settlement Agreement, the decision of the Court shall be final and non-appealable. In the discretion of the Court, the *prevailing party* in any such action may be entitled to recover reasonable attorneys fees and costs..." Therefore, Defendant asserts that, in order for Plaintiffs to collect additional attorney's fees under Section 13, the Court would have had to issue a "final and non-appealable" decision. Additionally, Defendant contends that in matters where the Court has not made such a decision, Section 13 is inapplicable.

The Court agrees and disagrees with Defendant's interpretation of Section 13. A fair reading of Sections 13 and 14 of the Settlement Agreement indicates that the parties contemplated that Plaintiffs might be required to undertake additional effort, and thus incur additional attorney's fees, over and above the sum certain referred to in Exhibit U. Exhibit U's original purpose was designed to compensate Plaintiffs for the effort needed to monitor and ensure that the delineated and agreed-upon modifications to the Stadium would be made timely and consistent with their agreement with Defendants. Section 13 was intended by the parties to serve some purpose and it appears to the Court that it was designed to be invoked only if the parties could not resolve disputes regarding those modifications by themselves without Court involvement. However, if the Court's intervention for resolution of those disputes became necessary, such intervention would trigger the provisions of Section 13 and could result in an award of attorney's fees to the prevailing party.

The Court agrees with Defendant's observation that, "... in

order for Plaintiffs to collect additional attorney's fees under Section 13, the Court would have to issue a 'final and non-appealable' decision."  If, as described above, the parties were unable by themselves to resolve disputes regarding modifications to the Stadium without Court intervention, then any decision by the Court to resolve any such dispute brought before it would, consistent with Defendant's observation, become a "final and non-appealable" decision.  Any such decision would be consistent with the parties' stipulation and agreement that the Court's decisions would be final and non-appealable. The Court would then be required to determine whether there was a prevailing party and grant or deny attorney's fees accordingly.  The Court is mindful of circumstances falling into both categories: disputes that were resolved between the parties without Court involvement and disputes that required Court intervention.  It is only the latter category that the Court addresses in this Order. (See p. 10 of this Order)

Almost immediately after April 1, 2001 (the first date that certain modifications to the Stadium were to be completed), Plaintiffs advised Defendant about several violations of the Settlement Agreement.  Plaintiff also advised Defendant that Defendant's construction drawings (which Defendant was required to present to Plaintiffs for review) violated the terms of the Settlement Agreement.  The parties could not resolve these disputes by themselves and Plaintiffs sought the Court's intervention. On August 7, 2001, the Court held a Settlement Conference with regard to the disputes and ordered the parties to meet and confer regarding the disputes and by August 30, 2001, bring any unresolved disputes to the Court's attention.  Thereafter, the Court conducted numerous

Settlement Conferences and Status Conferences, and issued numerous Orders regarding Defendant's compliance with the Settlement Agreement and completion of the modifications to the Stadium. The Settlement and Status Conferences regarding Defendant's compliance with the Settlement Agreement and modifications to the Stadium continued to January 15, 2009. At that time, Defendant had not fully complied with the Settlement Agreement and had not completed the modifications to the Stadium. Therefore, on January 15, 2009, the Court ordered that all modifications that need to be made to the Stadium shall be completed by April 1, 2009. During the 7 1/2 year time period from August 2001 to January 2009, Defendant acknowledged that it had not fully complied with the Settlement Agreement and had not completed the modifications to the Stadium. The Court's efforts in these regards have been prompted by Plaintiffs' bringing the compliance and modification issues to the Court's attention as a result of the parties' inability to resolve the disputes. Virtually all the disputes resulted in the need for Defendant to undertake remediation efforts pursuant to an oral or written order of the Court. Moreover, the decisions made by this Court with regard to these issues were final.

It is abundantly clear to the Court that "further proceedings," pursuant to Section 13 of the Settlement Agreement, were required and conducted, and final decisions were issued by the Court, to ensure compliance with the Settlement Agreement. The decisions by the Court resolved disputes between the parties regarding completion of the modifications to the Stadium. Even with the Court's intervention, Settlement Conferences, Status Conferences and Orders, Defendant has still not fully complied with the

Settlement Agreement and has not completed the modifications to the Stadium.

<u>Plaintiffs Are the Prevailing Parties With Respect To Enforcement of the Settlement Agreement</u>

Plaintiffs argue that, pursuant to Section 13, they are the prevailing parties with respect to enforcement of the Settlement Agreement. Therefore, they argue that they are entitled to additional attorney's fees related to involving the Court to ensure enforcement of the modifications to the Stadium. Specifically, Plaintiffs contend that since 2001, they have sought, through judicial intervention to resolve disputes, to enforce the Settlement Agreement and force Defendant to modify the Stadium to comply with the Settlement Agreement. Further, they assert that Defendant's violations of the Settlement Agreement have been continuous since 2001, and that judicial intervention to enforce the Settlement Agreement has been the only effective way to achieve their goal.

Defendant argues that, pursuant to the Settlement Agreement, attorney's fees and costs may only be awarded, in the Court's discretion, to the prevailing party in a situation where the Court has made a decision relating to the Settlement Agreement, which is "final and non-appealable." In situations where the Court has not made such a decision, Section 13 of the Settlement Agreement is not applicable and Plaintiffs would not be entitled to attorney's fees.

In a case pursued under the American With Disabilities Act, a court, "in its discretion, may allow the prevailing party... a reasonable attorney's fee." 42 U.S.C. §12205 "For a litigant to be a 'prevailing party' for the purpose of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the

legal relationship of the parties, and that alteration must be judicially sanctioned." Jankey v. Poop Deck 537 F.3d 1122, 1129-30 (9th Cir. 2008) citing Buckhannon Bd. & Care Home, Inc. V. W. Va. Dept. Of Health & Human Res. 532 U.S. 598, 605 (2001)

"A settlement agreement providing that the court will retain jurisdiction to enforce the agreement satisfies the requirements to render plaintiff a prevailing party under the (American With Disabilities Act)." Jankey, supra at 1130, Skoff v. Meridien North America 506 F.3d 832, 844, n. 12 (9th Cir. 2007) "The settlement meaningfully alters the legal relationship between the parties if it allows one party to require the other party 'to do something it otherwise would not be required to do.'" Jankey, supra at 1130, citing Fischer v. SJB-P.D., Inc. 214 F.3d 1115, 1118(9th Cir. 2000)

Here, the Court dismissed Plaintiffs' case pursuant to the Settlement Agreement between the parties and retained jurisdiction over the Settlement Agreement and its enforcement. The post-Settlement Agreement efforts by Plaintiffs' counsel, conferences held, and Orders issued by the Court have virtually all focused on Plaintiffs' attempts to force Defendant to comply with the Settlement Agreement and complete the modifications to the Stadium. The result of almost every conference with the Court, and almost every Order issued by the Court, came after the parties themselves were unable to resolve their disputes and required Defendant to comply, in some way, with the Settlement Agreement and/or make modifications to the Stadium that had not, or have not, been made. In that respect, the Court made final non-appealable decisions. To this day, the legal relationship of the parties is meaningfully being altered because the Court is issuing these decisions in which

Plaintiffs are asking the Court to require Defendant "to do something it otherwise would not be required to do." Consequently, Plaintiffs are the prevailing parties in this case, and have been the prevailing parties in virtually all post-Settlement Agreement decisions issued orally and in writing by this Court.

<u>Plaintiffs Are Entitled to Post-Settlement Agreement Attorney's Fees</u>

Plaintiffs' counsel seeks an award of $368,760.00 in attorney's fees at the rate of $375.00 per hour for post-Settlement Agreement work from June 14, 2001 to January 29, 2009. Plaintiffs' counsel has submitted orders of the court and declarations of counsel in other cases in which Plaintiffs' counsel was involved, which indicate that Plaintiffs' counsel's rate of $375.00 per hour is reasonable and appropriate. Defendant does not dispute Plaintiffs' counsel's hourly rate. Therefore, the Court finds that Plaintiffs' counsel's hourly rate of $375.00 per hour is reasonable. Further, Defendant does not dispute the number of hours claimed by Plaintiffs' counsel for the work performed.

Plaintiffs' counsel has indicated that Plaintiffs do not request attorney's fees for:

<u>1. Fee Agreement Benefits</u>

After the execution of the Settlement Agreement, Plaintiffs were entitled to certain ticket and other benefits including selecting seating locations over a two season period. Plaintiffs' counsel spent a significant amount of time coordinating and completing these benefits transactions.

<u>2. Plaintiff Walker Estate Damages</u>

After Plaintiff Beverly Walker ("Walker") passed away, Plaintiffs' counsel spent a significant amount of time researching

whether Walker's estate beneficiaries could continue her damage claims. Plaintiffs' counsel drafted extensive correspondence to Walker's estate executor regarding Walker's damage claims. Ultimately, the estate decided not to pursue any remaining damage claims.

### 3. Plaintiff Robert Hann Special Needs Trust

Plaintiffs' counsel spent a significant amount of time obtaining the Court's approval of the Special Needs Trust for Plaintiff Robert Hann.

### 4. Ticket Availability

Plaintiffs' counsel spent a significant amount of time communicating with Stadium representatives about the availability of free tickets for events.

### 5. Ticket Distribution

When Plaintiffs' counsel received free tickets pursuant to the Settlement Agreement, she and her assistant spent significant amounts of time delivering the free tickets to the "will call" window at the Stadium, to aid in the distribution of those tickets.

### 6. Tracking Ticket Use

Plaintiffs' counsel spent a significant amount of time communicating with Stadium representatives regarding trying to track the use of wheelchair location free tickets due to problems experienced in the years after the execution of the Settlement Agreement.

### 7. Bollards

Stadium representatives wanted to install bollards at curb cuts around the Stadium for security reasons. Plaintiffs' counsel spent a significant amount of time discussing the issue with Stadium

representatives.

8. <u>Plaintiff Walker and Plaintiff Neudeck Communications</u>

Since the execution of the Settlement Agreement, Plaintiffs Walker and Neudeck raised numerous Stadium-related issues that were not addressed in the Settlement Agreement. Plaintiffs' counsel spent a significant amount of time discussing these issues with Plaintiffs.
(Supplemental Declaration of Amy B. Vandeveld at 2-3)

Defendant states that the items identified above do not represent an exclusive nor exhaustive list of activities performed for which attorney's fees and costs may not be recovered.

The Court has discretion to determine the amount of the fee award. <u>Jankey</u>, <u>supra</u> at 1132, quoting <u>Hensley v. Eckerhart</u> 461 U.S. 424, 437 (1983) "If the court believes the overall award is too high, it needs to say so and explain why, rather than (make) summary cuts in various components of the award." <u>Jankey</u>, <u>supra</u> at 1133, <u>Moreno v. City of Sacramento</u> 534 F.3d 1106, 1113 (9th Cir. 2008)

Here, is clear that Plaintiffs' counsel's additional work, over and above the sum certain noted in Exhibit U, was primarily dedicated to enforcement of the Settlement Agreement and ensuring that modifications to the Stadium were completed timely and in accordance with the Settlement Agreement. However, not all of Plaintiffs' counsel's efforts resulted in "further proceedings" in which the Court had to resolve a dispute that could not be resolved by the parties themselves. Further, if these disputes were not presented to the Court for resolution, Plaintiffs could not be the "prevailing parties" because any material alteration of the legal relationship of the parties was not judicially sanctioned. These

97CV1547

efforts include Plaintiffs' counsel's work performed to: produce a brochure regarding a disabled person's access to purchase of tickets for events at the Stadium and access to the Stadium and its seats for the disabled[8], to review and correct construction plans for modifications to be made to the Stadium[9], to negotiate the number and placement of parking places for disabled drivers[10], to negotiate the procedure by which a non-disabled person could purchase disabled access seating[11], to obtain free tickets to events at the Stadium as referenced in the Settlement Agreement[12], and to remedy disruptions caused by one of the Plaintiffs during Stadium events.[13] The total amount of attorney's fees for these efforts total $5,857.25. Therefore, the Court reduces an attorney's fee award to Plaintiffs by that amount.

\\
\\
\\
\\
\\
\\

---

[8] Plaintiffs' counsel's attorney's fees regarding the brochure total $1,695.75.

[9] Plaintiffs' counsel's attorney's fees regarding the construction plans total $3,037.00.

[10] Plaintiffs' counsel's attorney's fees regarding the parking spaces total $150.00.

[11] Plaintiffs' counsel's attorney's fees regarding the procedure for a non-disabled person's purchase of disabled access seating total $787.00.

[12] Plaintiffs' counsel's attorney's fees regarding the free tickets total $75.00.

[13] Plaintiffs' counsel's attorney's fees regarding remedying the disruptions total $112.50.

As a result, Plaintiffs are awarded the sum of $362,902.75 as attorney's fees. ($368,760.00 - $5,857.25 = $362,902.75) Defendant shall pay that sum to Plaintiffs forthwith.

		Plaintiffs' Motion for Attorneys Fees is GRANTED in part and DENIED in part.

DATED: April 15, 2009

_____
Hon. Leo S. Papas
U.S. Magistrate Judge